JOHN E. BERRY *vs.* HENRY A. PIERSON AND WIFE.—*December* 1843.

After a sale of a tract of land, the vendor, in consideration of natural love and affection, under his hand and seal assigned the unpaid purchase money to one of his grand-daughters, and then devised the land to his four grand-daughters, including his grantee, "to be equally divided among them." Upon a bill filed by the grantee of the purchase money against the vendee, the executors of the vendor and her co-devisees, the latter agreed to a division of the balance of the purchase money among themselves, and to unite in a conveyance upon its payment, but one of the executors excepted to the averments of the bill under the act of 1832, ch. 302, on the ground that it did not charge him with the receipt of purchase money. HELD: that the sufficiency of the bill upon the appeal of that executor as against him, was open to the consideration of this court.

Where a bill is properly excepted to upon the ground of the insufficiency of its averments to charge a party proceeded against, whatever may be the proof, no decree can be pronounced against him.

Proper and sufficient allegations in a bill are necessary to prevent surprise and consequent injustice.

One who is executor, and as legatee claims a right to purchase money received by him, is a proper party to a controversy to settle the right to the fund, that full and complete justice may be administered to all the persons interested in its distribution.

Where a defendant consents to the ratification of an audit which charges him with a sum of money, this is sufficient evidence of its receipt by him.

Where a bill gives a defendant no intimation that any claim would be made against him, but the demand appears in the proof, he may by way of exception to the auditor's report, rely upon the act of limitations, and it is no objection that it was not taken in the answer.

The defence of limitations may be taken in equity as soon as by the proceedings, the party has notice that any claim was to be made against him.

A party who receives money as a *quasi* trustee, as for the use of those to

whom it belonged, not as acting under a continuing or express trust; whose duty it is to pay over immediately on its receipt, is liable to an action at law, and the act of limitations begins to run from the time of the receipt.

Where limitations are relied on in equity, and the court therefore deem it fruitless to proceed with the cause, though the claim could in other respects be maintained by an amendment of the pleadings, it will not be remanded.

APPEAL from the Court of Chancery.

On the 25th February 1835, the appellees filed their bill against *John T. Berry, Deborah Waring, William Edmonds* and *Rebecca* his wife, *John E. Berry, Otho B. Beall* and *Priscilla Waring*, alleging that on or about the 1st July 1826, a certain *Benjamin Berry*, late of, &c., (who has since departed this life,) the grand-father of your oratrix, being seized in fee simple of a certain tract, parts of tracts or parcels of land, with the appurtenances, situate, lying and being in *Prince George's* county aforesaid, commonly called "*Good Luck*," containing, or supposed to contain 250 acres, more or less, and being desirous of selling the said land, and a certain *John T. Berry* (one of the defendants hereinafter named,) being disposed to purchase the same, a contract was accordingly on the day and year aforesaid entered into, by and between the said B. B. and the said J. T. B. for the sale and purchase thereof. The said J. T. B. agreeing to pay, and the said B. B. agreeing to take for the said land and premises the price and sum of thirteen dollars per acre, so that the entire purchase money amounted to the sum of $3,250, interest being payable thereon from the day and year aforesaid; and your orator and oratrix further shew unto your honor, that the said J. T. B. paid to the said B. B., at the time of making said contract of sale, the sum of fifteen dollars on account and in part of the said purchase money, for which amount the said B. B., as your orator and oratrix are informed, passed to the said J. T. B. his receipt in writing of that date; and the said J. T. B. was thereupon immediately let into the possession of the said lands and premises, and has always since continued to use, enjoy and occupy the same. And your orator and oratrix also state unto your honor, that some time after the making of the said contract of

sale, to wit, on the 15th October 1827, the said B. B. executed
a certain instrument of writing, his own proper hand and seal
being thereto signed and affixed, and thereby for and in con-
sideration of the natural love and affection which he bore unto
your oratrix, his grand-daughter, (then named *Eleanor Waring*)
gave, assigned and transferred unto her the purchase money
aforesaid, as will more fully and at large appear by reference
to a copy of the said instrument of writing, which is herewith
filed, marked A, to which your honor is referred, and asked to
consider as a part of this bill of complaint. And your orator
and oratrix aver, that the said J. T. B. was duly notified of
the execution of the said instrument of writing, purporting to
be an assignment of the said purchase money to your oratrix,
very soon after the same was executed, to wit, on or about the
1st November in the year 1827, aforesaid. And your orator
and oratrix further represent unto your honor, that the said B.
B. in his lifetime was always ready and willing to perform his
part of the said contract, and if the said J. T. B. had paid to
your oratrix the purchase money aforesaid, with the interest
thereon, would have conveyed to him in fee simple the land
and premises aforesaid. But the said J. T. B. in the lifetime
of the said B. B., wholly failed to make any payment in addi-
tion to the one herein before mentioned, either to the said B.
B., or your oratrix his assignee, so that the said B. B. departed
this life without making him any conveyance or deed for the
same; that the said B. B. a short time before his death, to wit,
on the 8th December 1827, made and executed in due form of
law, his last will and testament in writing, and thereby devised
the said land and premises aforesaid, to his four following
grand-daughters, to wit, your oratrix and her three sisters,
*Deborah Waring*, *Rebecca Waring*, now the wife of one *Wil-
liam Edmonds*, and *Priscilla Waring*, at present residing in
*Montgomery* county in the State of *Ohio* aforesaid, as will
appear by reference to an extract from the said will, herewith
filed as exhibit B, which your orator and oratrix pray may be
also taken and considered as a part of this bill of complaint,
in consequence of which devise, your orator and oratrix are

advised, that the legal title to the lands and premises in question on the death of the said B. B. passed to your oratrix and her said sisters as tenants in common, and she therefore prays that her said sisters and the said W. E., the husband of the said *Rebecca*, may be made defendants to this bill of complaint. Your orator and oratrix also state, that the said B. B. by his said will, appointed a certain *John E. Berry and Otho B. Beall*, two of the defendants hereinafter named, and *Spencer Mitchell*, executors thereof; and the said *Spencer Mitchell* having declined accepting the trust confided to him in part by the said will, letters testamentary were in due form of law granted thereon to the said *John E. Berry* and *Otho B. Beall;* and your orator and oratrix further represent unto your honor, that the said J. T. B. being as aforesaid, notified of the assignment which your oratrix held of the purchase money aforesaid, afterwards made her the following payments on account thereof, to wit, on the 24th October 1828, the sum of $131.98, and on the 30th July 1832, the sum of $56.56; and your orator and oratrix therefore well hoped that the said J. T. B. would have paid to them the balance of the said purchase money, the whole thereof being long since due with interest as aforesaid, as in equity and conscience he was bound to do. But now so it is, that the said J. T. B. has hitherto wholly refused to pay to your orator and oratrix the balance of the said purchase money and interest or any further part thereof, sometimes pretending that he, the said J. T. B., is and hath always been ready and willing to perform the said agreement on his part, but that he cannot obtain a good and marketable title to the said land and premises, whereas your orator and oratrix charge, that the title which passed to your oratrix and her said sisters as aforesaid, under the will of the said B. B. is good and valid, and that your orator and oratrix are willing, as far as they can, to convey the same to the said J. T. B., upon being paid the balance of the said purchase money with the interest thereon; and they are further advised and insist, that your honor will compel the said *Deborah*, *Priscilla* and *Rebecca*, and the said *William Edmonds* her husband, on payment thereof, to join

with your orator and oratrix in such conveyance as may be necessary for conveying to the said J. T. B. the said title. And at other times, the said J. T. B. and the said *Deborah, Priscilla, William* and *Rebecca* his wife, pretend that your orator and oratrix are not entitled to receive the entire balance of the said purchase money, &c., but that the said sisters of your oratrix are entitled to equal proportions thereof, whereas your orator and oratrix insist, that in virtue of the before mentioned assignment, they are exclusively entitled to the same; and upon other occasions, the said J. T. B. and the said J. E. B. and O. B. B. as the executors of the said B. B., pretend that the said executors are entitled to receive the purchase money aforesaid, and insist that he, the said J. T. B. has made payments to them, for which he ought to be allowed a credit, all which actings, doings and pretences of the said defendants are contrary to, &c., and tend, &c. Prayer that J. T. B., D. W., W. E. and R. his wife, P. W., J. E. B., and O. B. B., executors of B. B., may, upon their respective oaths, true answers make, &c., and that an account may be taken of what is now due your orator and oratrix on account of the purchase money aforesaid, and interest, and that the said J. T. B., may by decree, be compelled to pay the same, or that the said lands and premises may be decreed to be sold in satisfaction thereof, your orator and oratrix insisting, that in virtue of the aforesaid assignment, they have an equitable lien thereon for that purpose; and that the said D. P. W. and R. his wife, may be decreed to unite with your orator and oratrix in such conveyance or deed, as may be necessary for transfering and assuring to the said J. T. B. and his heirs on payment of the said purchase money and interest the title aforesaid, and that your orator and oratrix may have other and further relief in the premises, &c.

EXHIBIT A: *Know all men by these presents*, that I, *Benjamin Berry*, of, &c., for and in consideration of the natural love and affection, which I have and bear unto my grand-daughter *Eleanor Waring*, have given, assigned and transferred unto her, all the purchase money for a tract of land called *Good Luck*, which I lately sold to a certain *John T. Berry*, and I do

hereby authorise the said *Eleanor Waring* to receive the said purchase money, and to sue for and recover the same; and in case the said *John T. Berry* should fail to pay for the said land, I hereby give the same to her.    Witness my hand and seal this 15th day of October 1827.

BENJAMIN BERRY (Seal.)

EXHIBIT B :  Extract from the will of the late *Benjamin Berry.*

"*Item.*  To my four grand-daughters *Eleanor, Deborah, Priscilla* and *Rebecca Waring* and their heirs forever, I give and devise all the lands purchased by me of *William Kilty* and *Walter S. Chandler*, and that part of the land purchased of *John Kadle*, which my said grand-daughters did occupy, and which is separated from the lands given by me to my son *John E.* by the courses and distances, &c., described by me in a deed to my said son *John E.*, bearing date the 15th day of March 1826, the said lands to be equally divided among my said grand-daughters."

The separate answer of *John E. Berry* admitted, that it is true that B. B., about the 1st of July 1826, sold to a certain J. T. B., a tract of land called "*Good Luck*," lying and being in *Prince George's* county, and containing about one hundred and forty-four acres, and not containing two hundred and fifty acres, as stated by the said complainants, and that the said B. B. sold the said land to the said J. T. B., at and for the sum of thirteen dollars per acre, and not for the sum of fifteen dollars per acre, as stated by the said complainants, and this respondent denies, that the said J. T. B. was to pay interest on the purchase, from the 1st of July 1826, as alleged by the said complainants, but agreed to pay interest only from the 1st of January 1827, when he took possession of said land.  This respondent is competent to speak and depose particularly respecting the terms of said contract, because he was present when the same was entered into between the said parties. This respondent further admits, that the sum of fifteen dollars was paid, on the day stated by the said complainants, by the said J. T. B., in part of the said purchase money for said land, and a receipt given him for the same by the said B. B., with regard to the assignment mentioned by the said com-

plainants, and marked exhibit A. This respondent alleges, that sometime in the year 1834, the complainants had recorded among the land records of *Prince George's* county, such an instrument, (and which was the first notice this defendant had of such pretended assignment,) purporting to have been executed by the said B. B. in his life time, who was the father of this respondent, but whether the same was in fact executed by the said B. B., or is altogether a spurious instrument, this respondent is wholly unable to say, and prays that this honorable court will require of the complainants the strictest proof of its authenticity and genuineness; and he is advised and insists, that if it is genuine, it is nevertheless void in law, and conveys no interest to the      of the complainants; and this respondent cannot positively say whether the said J. T. B. ever had any notice of said pretended deed of assignment or instrument of writing, but does not believe that he ever had. Further answering, this respondent expressly denies that the said B. B., in his life time, was ever willing, or intended to convey the said land to the said J. T. B., in fee simple, upon his paying the purchase money for the same to the said complainant *Eleanor*, as alleged by these complainants, and consequently, by his last will and testament gave and devised the said tract of land, together with other parcels or tracts of land, to his four grand-daughters, to wit, the complainant E., D. W., *Rebecca*, now wife of W. E., and P. W., and as stated by the said complainants, as appears from the extract taken from said will, which is a true extract, and marked exhibit B, by the complainants, and made a part of their bill of complaint. This respondent admits that the said will bears date the 18th of December 1827. This respondent further admits, that the said B. B., by his last will and testament, appointed himself, O. B. B., and a certain *Spencer Mitchell*, his executors thereof, and that after the said *Spencer Mitchell* declined accepting the trust confided to him in part by the said will, letters testamentary were in due form granted thereon to this respondent and the said O. B. B. Further answering, this respondent says, that he does not know that the said J. T. B. ever made any payments

to the said complainants, or either of them, in virtue of said pretended assignment; that this complainant, as one of the executors of B. B. aforesaid, about the 20th October 1828, gave the said complainant *Eleanor*, an order on the said J. T. B., which he believes was accepted and paid, and he presumes that this is the first payment mentioned by the said complainants as having been made by the said J. T. B. to them, in virtue of the said assignment, and this respondent states that he recollects that about the last of July 1832, he gave, as executor as aforesaid, a similar order on the said J. T. B., in favor of the said E., and which he believes was accepted and paid by the said J. T. B. in pursuance of this respondent's order; and this respondent further states, he never did recognize the said complainant E. as assignee of the purchase money for said land, and he does not believe that J. T. B. ever did, and he believes that this last mentioned order as the second payment of $56.56, alleged by the said complainants to have been made them by the said J. T. B., in virtue of said assignment. This respondent further answering, says, that it is true that he has always denied the right of the complainants, or either of them, to receive any part of the said purchase money from the said J. T. B., and always claimed the right to receive it himself as one of the executors, and believed that he was entitled to it as residuary legatee of his father, and that the said J. T. B. has, at divers times, made this respondent, as co-executor as aforesaid, large payments on account of said lands, and has also, he believes, made the said O. B. B., as co-executor of said B. B., large payments on said land, for which he is entitled to a credit. And this defendant denies all and all manner of confederacy, &c.

The other parties having answered the bill or been proceeded against by publication, it was then agreed that the bill should be treated as amended, by charging that the assignment by B. B., deceased, to the complainant E., mentioned in the proceedings, was intended and designed for the common benefit of herself and sisters, and that the devise of the land sold by said *Berry* to the defendant J. T. B., which is to be found in the last will

31            v.1.

and testament of the said *Berry*, deceased, was made to give full effect to the aforesaid assignment to the said complainant, E., and also, by stating the agreement between the said B., deceased, and the said defendant J. T. B., in regard to the price of the land sold as aforesaid and the period from which the purchase money is to bear interest, so as to conform to the admissions contained in the answers in these respects; that' the answers already filed shall be treated as answers to the said amendment, and the testimony is to be treated as testimony taken after issue joined upon such amended bill and answers thereto.   It is further agreed, that if the Chancellor shall decree in favor of the complainants, the cause shall go to the auditor for an account, and liberty shall be given to each party to introduce testimony before the auditor in regard to the precise quantity of land sold.

The defendant *John E. Berry* filed his points and exceptions as follows, to wit:

1st. That the assignment to *Eleanor Waring*, referred to in the bill of complaint, was fraudulent and void, and was not recorded as it ought to have been.

2nd. That the devise to the said *Eleanor* and her three sisters, under the will of *Benjamin Berry*, of the tract of land called *Good Luck*, sold to the defendant *John T. Berry*, was a void devise, he having sold the said lands to *John T. Berry* anterior to his death.

3rd. That the proceeds of said sale to *John T. Berry* belonged to *John E. Berry*, as residuary legatee under the said *Benjamin Berry's* will.

4th. That the complainants cannot recover against the said *John E. Berry* in this case, because the Chancellor has not jurisdiction; they should have sued him at law to recover such part of the money claimed by them as they could prove this defendant had received from *John T. Berry*, and failed to pay it over to them.

5th. Because they do not ask for a decree against this defendant, and such a decree does not come within the scope of their bill, nor within its prayer.

EXCEPTIONS of *John E. Berry* to the sufficiency of the aver-
ments and allegations in the complainant's bill.

1. There is no averment or allegation in the complainant's
bill that *John E. Berry*, as executor of *Benjamin Berry*, received
any payments from *John T. Berry* on account of the purchase of
the tract of land called *Good Luck*, mentioned in the proceed-
ings, as there ought to have been to authorise a decree against
*John E. Berry* in this case.

2. The bill does not aver or allege that *John E. Berry*, as
trustee, executor or agent, received any payments from *John
T. Berry*, as it ought to have done to authorise a decree against
him.

On 5th November 1841, the Chancellor (BLAND,) ordered
that this case be and the same is hereby referred to the auditor,
with directions to state an account, shewing the amount of the
purchase now due to the said devisees of the vendor, to whom
the vendor's lien has passed. The purchaser *John T. Berry*
and the executor *John E. Berry* are to be regarded as the only
defendants personally liable, the purchaser on the ground of
his contract, and the executor on the ground of his receipt
and failure to apply the money, as in equity he was bound to
do. The parties are hereby authorised, according to the terms
of their agreement, filed on the second instant, to have a sur-
vey made of the land sold, by the surveyor of *Prince George's*
county, or to take testimony in relation to the said account,
before any justice of the peace, on giving three days notice,
provided that such survey be made or testimony taken and filed
in the chancery office, in this case, on or before the 15th day
of January next.

A survey was accordingly made, and the quantity of land
sold admitted.

On the 8th March 1842, the auditor reported accounts A
and B.

Account A is a statement of the debt due by the defendant
*John T. Berry*, for his purchase of land from *Benjamin Berry*,
deceased, in which he is charged with the purchase money,
according to the agreement filed 2nd November 1841, and

credited with the several payments admitted and proved to have been made to the executors of the deceased, as well as to the complainant *Eleanor* and her sisters.   The balance shown to be due with interest to the date of this report, has been distributed, at the foot of this account, amongst the complainants and the defendants, sisters of the said *Eleanor*.   This distribution has been made, although the sisters are not complainants, because the complainants have called upon them to join in a conveyance on the payment of the balance of the purchase money, and the defendant *John T. Berry* has offered himself ready to pay the same, whenever directed so to do.

In account B, *John E. Berry*, one of the executors of the deceased, has been charged with that part of the purchase money received by him from the defendant *John T. Berry*, and with interest thereon to the date of this report.   The amount shown by this account has, at the foot thereof, been distributed in the same manner and for the same reasons as in account A, and in making that distribution the auditor has credited the executor with his payments to the complainant *Eleanor*, before her marriage, and to the defendant *Priscilla*, by deducting the same, with interest, as charged to him in the account, from their respective shares.

The defendant *John E. Berry*, excepted to the auditor's report and statement made and filed in this case, and prays the same may not be ratified by the Chancellor, except as to the amount awarded to *Henry A. Pierson* and *Eleanor*, his wife, to wit, the sum of $112.64; to that extent he is willing that the report and statement be ratified for the following reasons and causes:

1. Because the said *William Edmonds* and *Rebecca*, his wife, *Priscilla Waring* and *Deborah Waring* were co-defendants with this exceptant, and they therefore cannot recover in this proceeding.

2. Because these parties should have been complainants to enable them to recover against this exceptant.

3. Because this exceptant has had no opportunity of defending himself against the claim of these co-defendants.

4. Because their claim is barred by the statute of limitations which he pleads now to the same, and he pleads the statute of limitations to each and every one of the claims of the said *William Edmonds* and *Rebecca*, his wife, of *Priscilla Waring* and *Deborah Waring*, respectively, as allowed and reported against this exceptant in account B, by the auditor.

5. Because the whole proceeding is irregular.

6. Because the allegations and averments in the original and amended bills of complaint are insufficient to entitle the said parties and co-defendants with this exceptant to recover against him.

On the 15th day of April 1842, the parties filed the following agreement:

"We, the undersigned, solicitors for our respective clients, consent and hereby agree, that the auditor's account and report marked A, and filed in this cause, shall be ratified and confirmed by the court at once; and also agree and consent that a decree may be passed, ordering and directing that a deed in fee simple, executed and acknowledged according to law, shall be given by *Henry A. Pierson* and *Eleanor*, his wife, *William Edmonds* and *Rebecca*, his wife, *Deborah Waring* and *Priscilla Waring* to *John T. Berry*, for the land and real estate mentioned in the proceedings, upon the payment to them of the sum of $1,231.90, with interest, in the manner and proportions as stated in the auditor's account A aforesaid.

This agreement is not to affect account B of the auditor, as to questions arising in reference to it between the parties to the above cause. But the said account B, with the exceptions thereto, are submitted to the Chancellor for decision according to the usual principles."

On the 18th of April 1842, the Chancellor (Bland,) decreed, that the auditor's report, filed on the 8th of March last, be ratified and confirmed, and that the exceptions thereto filed, be and the same are hereby overruled. And it is further adjudged, ordered and decreed, that the defendant *John T. Berry* forthwith pay, or bring into this court to be paid, unto the complainants the sum of, &c., and unto the defendants *William*

*Edmonds* and *Rebecca,* his wife, the sum of, &c., and unto the defendant *Deborah Waring,* the sum of, &c., and unto the defendant *Priscilla Waring,* the sum of, &c., and that on payment of the aforesaid sums of money, with interest as aforesaid, or bringing the same into court, *John B. Brooke,* of *Prince George's* county, shall be and hereby is appointed trustee, with power and authority, for and in the name of the complainants and the defendants *William Edmonds* and *Rebecca,* his wife, *Deborah Waring* and *Priscilla Waring,* to convey unto the defendant *John T. Berry* and his heirs, by a good and sufficient deed, &c.

And it is further adjudged, ordered and decreed, that the defendant *John E. Berry* forthwith pay, or bring into this court to be paid, unto the complainants, the sum of $112.64¾, with interest thereon from the 8th day of March last, and unto the defendants *William Edmonds* and *Rebecca,* his wife, the sum $439.67¾, with interest thereon from the 8th day of March last, and unto the defendant *Priscilla Waring,* the sum of $396.75¾, with interest thereon from the 8th day of March last, and unto the defendant *Deborah Waring,* the sum of $439.67¾, with interest thereon from the 8th day of March last. And it is further adjudged, ordered and decreed, that the defendants *John T. Berry* and *John E. Berry* pay to the complainants their costs of suit, to be taxed by the register.

From this decree, *John E. Berry* appealed to this court.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By C. C. MAGRUDER and PRATT for the appellants, and
By ALEXANDER for the appellee.

ARCHER, J., delivered the opinion of this court.

Exceptions, in pursuance of the act of 1832, ch. 302, have been taken to the sufficiency of the averments in the bill, to charge *John E. Berry,* the present appellant, with the sum decreed against him.

The questions, therefore, which have been raised in this court against the sufficiency of the bill, are open for our consideration.

The bill and its amendment have been filed manifestly with the design of compelling the specific execution of a contract, in obtaining from *John T. Berry* the balance of the purchase money due from him for the purchase of a tract of land from *Benjamin Berry.* There is not only no allegation, but no intimation in the bill that any of the purchase money has come into the hands of *John E. Berry*, either as executor of *Benjamin Berry* or otherwise, and therefore no foundation whatever furnished for any decree against him for any portion of the purchase money. Whatever may be the proof, no decree, but upon proper and corresponding allegations, can be passed. The adherence to this familiar principle is necessary to prevent surprise and consequent injustice. The decree must therefore, upon this ground, be necessarily reversed.

That upon proper allegations, which the facts of the case would have justified, the Court of Chancery would have had jurisdiction to have decreed the payment over to the parties entitled, their proportion of the purchase money, we entertain no doubt. The right to the purchase money is claimed by *John E. Berry*, as residuary legatee of *Benjamin Berry*, and it was proper, therefore, that he should be a party to the controversy, that full and complete justice might be administered to all the parties interested. It was necessary for the safety of the vendee, who was about to be compelled to pay the purchase money, that all the contested rights to the purchase money should be adjusted.

We apprehend there is sufficient proof in the record of the receipt of the sum of money, part of the purchase money, by *John E. Berry*, which is stated in account B. His answer admits the receipt of large sums of money, which he asserts belongs to him as residuary legatee of *Benjamin Berry*, and in account A, it is stated, that there was paid to *John E. Berry*, one of the executors of *Benjamin Berry*, as per receipt, filed 16th August 1829, the sum of $791.92. The ratification of

this account was had by consent of *John E. Berry* and the other parties to the case, which, we apprehend, constituted sufficient evidence of the receipt of the money.

To the ratification of account B, *John E. Berry* has excepted, and among other reasons, that the claim against him is barred by limitations. It is no objection to this defence, that it was not taken in the answer, because, as we have seen, the bill gave him no intimation that any claim would be made against him, by any allegation contained therein, and the defence was taken as soon, as by the proceedings he had notice that any claim was to be made against him.

Limitations, however, it is said, constitutes no defence. The money was received in 1829, and the bill was filed in 1835. Thus a period of six years had elapsed from the receipt by *John E. Berry*, of the purchase money with which he is attempted to be charged and the filing of the bill. The lapse of such a period, as would bar at law, an action for money had and received, would, by analogy, bar this claim in equity. It is true that *John E. Berry*, in the receipt of this money, might be considered as a *quasi* trustee, and as having received it for the use of those to whom it belonged, but he was not acting under a continuing or express trust, but his duty was to pay it over immediately on its receipt, and an action at law might have been maintained for its recovery; the statute ought therefore to be considered as running from the time of the receipt of the money.

The rights acquired to this purchase money were by assignment, and not by last will and testament. The admission of the parties is, that the devise of the land was, with the view of confirming the claim under the assignment. The claim, therefore, does not partake of the character of a legacy, so that limitations would not attach. Limitations, then, in our view, being a bar to the claim against *John E. Berry*, and such defence having been interposed, we deem it fruitless to remand the cause to the Court of Chancery for further proceedings.

So far, therefore, as the decree affects the appellant, (except, in so far as the same was passed by consent,) it is *reversed*.

DECREE REVERSED IN PART.