IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF PISCATAQUIS,

ARGUED AT JUNE TERM, 1843.

## OLIVER CROSBY *versus* SAMUEL WYATT.

Where it appears upon the face of a promissory note, that one of the makers is principal and that the others are sureties, and one of the latter, having paid the note, claims contribution of the other, the character in which the parties signed will be presumed to be correctly exhibited by it; but the contrary may be proved by the other party.

Where it was the custom of a New Hampshire Bank to receive payments of interest from time to time on notes in advance, and suffer them to remain, and still hold the sureties, and this custom was fully known to both principal and sureties, and they come into this State to enforce a contract, made in that State, arising out of a note to such bank whereon they are sureties, and interest on the note in advance has been taken of the principal, the sureties will not be considered as discharged by the taking of such interest in advance.

If a suit be brought by the payee against one of two sureties on a note before the statute of limitations could be successfully interposed as a defence by either party, and judgment is obtained therein after the time when the statute would have furnished a defence in a suit then commenced by the maker, and this judgment is satisfied, the same statute would not prevent the maintenance of an action against the co-surety for contribution, brought within six years from the time of payment.

Where the debtor, at the time the cause of action accrued, was residing out of the State, proof that since that time, he had often been a few miles within the limits of this State on business, with attachable personal property, which was removed on his return to his own dwelling in another State, without any proof that the plaintiff had knowledge of it, is not sufficient to take the case out of the operation of the exception contained in the ninth section of the statute of limitations of 1821, c. 62.

Crosby *v.* Wyatt.

Assumpsit. The writ is dated May 29, 1841. With the general issue, the statute of limitations is pleaded.

Prior to 1816 Oliver Crosby, the plaintiff, and Jesse Varney had been partners in business in Dover in the State of New Hampshire, and on July 25, 1816, they, severally, as principals, and Mann and Chandler, as sureties, made their note to the Strafford Bank, located at Dover, for one thousand dollars, and it was discounted by the bank. On May 25, 1821, this note had been reduced by payments to the sum of $600,00, and was then taken up, and the remaining $600,00 were paid by a note to the bank, dated that day, and signed by Varney, as principal, and by Crosby and Chandler as sureties. On May 25, 1825, this last note was taken up by another for the same amount, bearing date March 28, 1825, to which time the interest had been paid, signed by Jesse Varney, as principal, and by the present plaintiff and defendant as sureties. Each of these notes was made payable in sixty days. All these persons resided in Dover until April, 1821, when Crosby removed to Atkinson in the State of Maine, where he has since lived. The others have continued to live in Dover. On Feb. 3, 1830, the Strafford Bank commenced a suit upon this note, several payments of interest having been made by Varney upon it, and sometimes in advance, against Crosby, and recovered judgment against him in the Supreme Judicial Court, for the county of York, at the April Term, 1832. (See 8 Greenl. 191.) On May 28, 1832, Crosby paid the amount of this judgment, in New Hampshire, to the bank, being then $835,70, and on the same day demanded of Wyatt, at Dover, payment of one half the sum he had thus paid. That bank " has been in the habit of discounting accommodation notes made payable to said bank in 60 days, and when said notes have become due, the custom has been to receive checks and interest, and in many cases merely the interest for the next 60 days, and to indorse the same on said notes, and to continue to indorse every 60 days, or whenever payments are made, without releasing the sureties; it has been frequently the case that notes have remained several years, and nothing but interest

been paid upon them. It is understood that the note is to lie during the time for which interest is paid, but either principal or sureties have liberty to take up the note in the mean time." Varney, Crosby and Wyatt, severally, knew of this custom at the bank, and had done business there in that mode. Varney was in good credit until May, 1828, when he failed, and has since been without property. It would seem that Wyatt had been within the State of Maine within six years next after the payment by Crosby, but no copy of the deposition referred to is found in the case.

*Rowe,* for the defendant, remarked that the action by one surety against another was borrowed from equity. Where there is an equality of liability, there should be an equality of burden. Where equity says there should be a contribution, the law implies a promise. 14 Ves. 163 ; 1 Cox, 318 ; 2 B. & P. 270 ; 12 Mass. R. 102. But if one surety become such at the request of another, the latter cannot claim contribution. 2 Esp. R. 478.

To render the defendant liable, the plaintiff *must show both* a moral obligation, and a legal liability. He has done neither. This note grew out of one whereon the plaintiff was a principal. The plaintiff has never for a moment been discharged from that liability, and in making this payment, he was in fact but paying the joint debt of himself and Varney. The defendant's name was given for an extension of time, and not for a new loan. Whatever the form of the transaction may be, it makes no difference. The Court will look through forms to facts. 14 Mass. R. 163 ; 12 Mass. R. 102 ; 1 Cox, 318.

If the defendant had ever been liable to contribution, he was discharged by the statute of limitations before the payment by the plaintiff to the bank was made. The contract was made in New Hampshire, and the laws of that State must govern, and by them the defendant is discharged. 2 Kent, 459 ; 2 Mason, 157 ; 1 East, 6 ; 5 East, 124 ; 13 Mass. R. 1. More than six years had elapsed before the plaintiff's payment, and the defendant has done no act since to make himself liable. And by the laws of New Hampshire no payments or promises

by one of several joint promisors, can take the contract out of the operation of the statute of limitations as to the others. *Exeter Bank* v. *Sullivan*, 6 N. H. R. 124. On the day of payment, the bank could have maintained no action against the defendant by the laws of New Hampshire, and by the same laws the plaintiff could do no act, which would create a new liability.

By the laws of New Hampshire, also, the defendant was discharged by giving day of payment to the principal.

The defendant too was discharged by the statute of limitations of Maine. Six years had elapsed after the plaintiff paid the money, long before this suit was brought, and the defendant before that time, had been in this State, subject to process.

*J. Appleton*, on the same side, cited 4 Ham. 358; 2 Greenl. 42; 6 Gill & John. 256; 21 Pick. 195. And also, in the close, replied to the arguments for the plaintiff.

*Ingersoll* and *J. Crosby* argued for the defendants, contending:

That the plaintiff and defendant stood as co-sureties for Varney, and not as principal and surety. There is no evidence that the note for a thousand dollars was a partnership note, and there is evidence that long before the last note was given, the plaintiff had removed to the then County of Penobscot, and that Varney had continued in New Hampshire. The first $600,00 note, with the balance in cash, was a full and complete payment of the first note. 10 Pick. 121; 2 Metc. 157; 2 Greenl. 121; 13 Pick. 426; 15 Mass. R. 69.

The note on its face shows, that Varney was principal, and the plaintiff and defendant his sureties. There is not only an entire absence of evidence to show any different relation, but it would not be competent for the defendant to introduce it. 4 Greenl. 195; 19 Maine R. 244; 2 Stark. Ev. 548; 5 Taunt. 192; 10 B. & C. 578; 6 Mass. R. 519; 7 Mass. R. 518.

The defendant was not discharged by the reception of interest in advance from Varney. The case *Strafford Bank* v. *Crosby*, 8 Greenl. 191, is conclusive. It was the same trans-

action, and there is no material variance in the evidence in the two cases. *Freeman's Bank* v. *Rollins*, 13 Maine R. 202; *Oxford Bank* v. *Lewis*, 8 Pick. 450; *Central Bank* v. *Willard*, 17 Pick. 150; 2 N. H. R. 448; 3 N. H. R. 231; 5 N. H. R. 99. That it should operate as a discharge of a surety the holder of the note should enter into a contract which should disable him from proceeding against the principal, or enable him in equity to claim an injunction. 15 Maine R. 249; 2 Metc. 176; 16 Maine R. 72; 10 Pick. 129; 20 Maine R. 235. To have that effect, too, the contract must be founded upon an adequate consideration. 16 Maine R. 72; 19 Maine R. 88.

The statute of limitations would have furnished no defence to Wyatt in this State, if at the time of the signature of the note he had, like Crosby, been an inhabitant of this State when the note was made, and so continued until the present suit was brought, either as against the bank, or his co-surety. And his remaining in New Hampshire could in this respect give him no additional advantage. 17 Mass. R. 55; 2 Mason, 151; 11 Pick. 36; 2 Mass. R. 84; 20 Pick. 305. But if the statute of limitations would have furnished a defence in a suit by the bank, it could not in a suit by Crosby. The cause of action does not accrue until payment is made by the surety. 11 Mass. R. 361; 19 Maine R. 244; 4 Greenl. 195; 1 Metc. 381. The defendant was not discharged by coming within the State in the manner he did. 16 Pick. 359. The same reasons, and the same authorities, now pressed upon the attention of the Court by the defendant on this point, would apply with as much force, if this suit had been brought against Varney, the principal.

The opinion of the Court was drawn up by

SHEPLEY J. — The plaintiff has instituted this suit to recover one half of the amount of money, which he paid to the Strafford Bank, to satisfy a judgment recovered against him on a promissory note made on March 28, 1825, by Jesse Varney, as principal, and by the plaintiff and defendant as his sureties.

It is contended in defence, that the plaintiff was in fact a principal on the note, although he signed it as a surety. From the testimony of the cashier of that bank it appears, that prior to the year 1816, Crosby and Varney were partners in business in the town of Dover, N. H., the then place of residence and of business of all the parties to the note; that on the twenty-fifth day of July of that year Crosby and Varney made their note to the bank as principals, with John Mann and Philemon Chandler as their sureties, for one thousand dollars; and that note remained in the bank on May 25, 1821, having been reduced by payments in part to the sum of $619,24, when it *was taken* up by a new note for $600, the balance having been paid in cash, signed by Varney as principal and by Crosby and Philemon Chandler as sureties. This last note remained in the bank on May 25, 1825, when it was taken up by the note first named. The character, in which the parties signed that note, is presumed to be correctly exhibited by it, until the contrary be proved. Are the facts, that the loan of 1816 was made to Varney and Crosby, and that they were then partners in business, sufficient to destroy that presumption, when considered in connexion with the other testimony in the case? It appears, that part of the loan had been paid, and that Varney became the principal and Crosby a surety on a note to pay the residue as early as the year 1821; and that Crosby removed from Dover to the town of Atkinson in this State, in 1820 or 1821, and that he has since continued to reside there. Varney therefore became principal for the residue of the loan about the time or soon after Crosby's removal. When the last note was made, Crosby had been absent from Dover as a place of residence for four or five years. During that time Varney had paid the interest on the second note. If these facts would not be sufficient to authorize the inference, that the joint interest of Varney and Crosby in the original loan had been extinguished, and that Varney had assumed the payment of the balance due before the defendant signed the last note as his surety, they would at least be sufficient to neutralize the influence of the facts before referred to, and to leave the case with-

out satisfactory proof, that the note did not exhibit the true relation of those who signed it. The testimony does not therefore rebut the presumption of law, and establish the fact, that Crosby was in fact a principal upon the last note.

It is further contended, that the defendant was discharged by the bank by its giving time to the principal ; and also by the statute of limitations of that State. The only proof, that the bank gave time to the principal, arises from its permitting the note to remain uncollected, and from its having received payments of interest upon it according to the usages of the bank. These usages appear to have been well known to the defendant. Under such circumstances the defendant would not be discharged, as the law appears to have been formerly administered in New Hampshire as well as in this State. In the case of *Bank* v. *Woodward,* 5 N. H. R. 99, the opinion says, " the note was originally payable on demand, although probably interest was paid for sixty days in advance with an understanding between the parties, that the money was not to be demanded within that time, unless the safety of the debt, or the situation of the affairs of the bank, should make a demand necessary. And the interest might have been paid in advance at any subsequent period, on the same terms and with a like understanding, without doing any wrong to the surety, and without discharging him from his liability upon the note." In a recent decision made between these parties in a case arising out of the same facts, the payment of the interest in advance was considered as *prima facie* evidence of a contract for the delay of payment of the principal during the period for which the interest was so paid. *Crosby* v. *Wyatt,* 10 N. H. R. 318. But such has never been admitted to be the effect here. If it had been, or their law should be considered as decisive, the long continued usage of the bank, well known to both the sureties, would seem to be as satisfactory evidence of an assent on their part to the agreement for delay, as the payment of interest in advance would be of such an agreement.

A payment of part of the debt by one of several joint debtors would not, as the law has been decided to be in New

Hampshire, authorize the inference of a new promise by all. *Exeter Bank* v. *Sullivan*, 6 N. H. R. 124. While it would have that effect in Massachusetts and in this State. *Frye* v. *Barker*, 4 Pick. 382; *Getchell* v. *Heald*, 7 Greenl. 26. But the defendant was not discharged by the statute of limitations of New Hampshire, when the suit was commenced by the bank against the plaintiff on February 3, 1830. If therefore the plaintiff had been then resident in New Hampshire, he could not have succeeded in a defence for himself or his fellow surety, founded upon the statute of limitations. As the bank did not recover judgment against him until the year 1832, and as he did not pay that judgment until the year 1833, it is contended, that he did not then relieve the defendant from any existing liability; because he could then have interposed the statute of limitations with success; and that the plaintiff is not therefore entitled to recover. If this reasoning were admitted to be sound, the result would be, that one of two sureties might be compelled by law to pay the whole debt, and yet could have no legal claim for contribution upon the other, unless he could shew, that the creditor had a legal claim upon that other, not only, when the debt was contracted, but when it was paid. And such a doctrine would enable the creditor frequently to impose the whole burden upon one of the sureties by omitting to commence a suit against the other, until he could successfully interpose the statute of limitations. Such a course of reasoning arises out of an imperfect statement of the implied contract between the two sureties. That contract is, that each surety will pay one half of the debt if the principal neglects to pay it, or will save his co-surety harmless from injury by his being obliged through the neglect of the other surety to pay more than his half of it. The obligation of one surety to repay to another, who has paid the whole debt, a moiety of it, does not arise solely out of the consideration, that he has thereby been relieved of a burden, but also from the consideration, that he engaged to indemnify him against loss arising from his own neglect to pay his own share, in case the principal should neglect to pay. It is no sufficient

defence therefore for the defendant to show, that he could not have been compelled by law to pay any part of that note, when it was paid by the plaintiff; for that would not show, that he had not broken his implied contract with the plaintiff to save him from loss by his being compelled to pay that half of the note, which he ought himself to have paid. The plaintiff's right of action for the breach of that engagement first accrued upon payment of the whole debt to the bank in the year 1833. The defendant was then residing in New Hampshire. The testimony, which proves, that since that time he had often been a few miles within the limits of this State on business with attachable personal property, which was removed again from the State on his return to his own dwelling, without any proof that the plaintiff had any knowledge of it, is not sufficient to exclude the case from the exception contained in c. 62, § 9. *Little* v. *Blunt*, 16 Pick. 359. It is not perceived, that any of the points made in the defence can be successfully maintained.

*Judgment on the default.*