# REPORTS.

## STRAFFORD,

### DECEMBER TERM, A. D. 1860.

### WHITEHOUSE *v.* HANSON.

Presumptively, the parties to a promissory note stand to each other in the relations in which their names appear. As between themselves and as against the holder who took the note with knowledge of their true relations, the facts may, for some purposes, be shown.

To make one surety upon a note a principal as to another surety, it must be shown that the latter became surety at his request.

One who signs a note as surety, but without the addition of surety to his name, and leaves it in the hands of his principal, does not thereby make the principal his agent to request others to sign as sureties for him as a principal.

ASSUMPSIT, to recover $405.25, money paid, laid out and expended by the plaintiff, Nicholas V. Whitehouse, for the defendants, John P. Hanson and John Trickey, and interest thereon from the 27th day of September, 1858. The plaintiff alleged that he signed as surety a promissory note for one Moses Place and the defendants, as principals, dated August 12, 1856, payable to the Savings Bank for the County of Strafford, or order, for $1500, in six months: signed Moses Place, John P. Hanson, John Trickey; N. V. Whitehouse, surety; Thomas Stackpole, surety.

The plaintiff testified that he paid $405.25 to the attorney of the Savings Bank, September 27th, 1857, being one quarter of the amount due on the note. When he signed the note he was at Dover. Place asked him to sign the note as surety for himself, Trickey, and Hanson, whose names were on the note as principals. He delayed signing till afternoon, in order to ascertain Trickey's ability; ascertained he was responsible, and told Place if he would get another good man on the note he would sign it, and named Stackpole. He signed, adding surety to his name. He did not know that Hanson and Trickey were sureties, or he would not have signed. He did not know the purpose of procuring the money.

Objection was made to the admission of Place's statements, and overruled.

Stackpole testified that he signed the note as surety, at the request of Place. He could not state the time, but had a memorandum of it. He was permitted to produce it, and read from it: "August 12, 1856, signed note as surety, with N. V. Whitehouse as surety, with Moses Place, Hanson and Trickey, to Savings Bank, payable in six months." Place asked if he would sign the note with himself, John P. Hanson and John Trickey. He told him he would, if Whitehouse would sign. He did sign it after Whitehouse. After Place's death, he told Hanson he and Trickey were principals, and he had better see to it. He said he would attend to it, and started toward the Savings Bank, remarking half a loaf would be better than no bread. Place asked him if he would sign with Hanson, Trickey and himself, as principals, and Whitehouse as surety with him.

The declarations of Place, and the conversation with Hanson, were objected to, but admitted.

It appeared a suit was brought on the note against all the signers. Place died, and the judgment and execution were against the other four.

Trickey testified he signed the note as surety for Place, had none of the money, nor any benefit out of it. Place asked him to sign with J. P. Hanson, N. V. Whitehouse and himself. Place and Hanson signed before he did. He had paid one fourth of the debt and costs.

Hanson testified he signed the note at the request of Place, and as his surety, Place saying that Trickey and Whitehouse would also sign it. He paid one fourth of the note.

The court charged the jury that this note, without explanation from parol or extrinsic evidence, would fairly represent Place, Hanson and Trickey as all alike principals, and the plaintiff might well have presumed them to be so from the face of the note alone. It was competent to show by parol testimony the true relation in which the parties stood to each other, and who were principals and who surety. If the plaintiff, when he signed this note as surety, knew, or had good reason to believe that Trickey and Hanson were sureties, he could not recover. The jury might examine the acts and declarations of Place, when he procured the signatures, whether made to the plaintiff or to the defendants, and determine how Place held himself out, and how the defendants held themselves out, and whether the plaintiff was induced thereby to sign without notice or knowledge that Place was the principal. If the defendants, having signed their names with Place in the manner they did, allowed him to take the note and go out into the market, or to the Savings Bank, for the purpose of raising money on it, they thereby, by legal intendment, made him their agent for that purpose, and adopted his acts and declarations, and would be bound by them. Hence the representations, made to the plaintiff by Place, in order to obtain his aid to raise the money, became evidence for the jury to consider; and if they believed they were thus made, might justify them in charging the defendants. The memorandum of Stack-

pole, as read to refresh his memory as to the time of sign-
ing the note, was evidence only for that purpose.

A new trial was moved for by the defendants, on excep-
tions to the rulings and charge of the court.

*Wheeler & Hall*, for the defendants.

The holder of a negotiable note has a right to treat
all the signers as principals, if no other relation appears
upon the face of the note. But, as between the promisors
themselves, a different rule prevails; where one of them
is sued, he may prove that he was a co-surety, though
that fact does not appear upon the note, and was not com-
municated to a subsequent surety. *Grafton Bank* v. *Kent*,
4 N. H. 224; *Nichols* v. *Parsons*, 6 N. H. 30; *McGee* v.
*Prouty*, 9 Met. 547; *Wilson* v. *Foot*, 11 Met. 285. The
law respecting sureties, and their obligations to contribute
proportionally, does not arise out of contracts between
them, but is founded on principles of equity, and the ob-
ligation is enforced as a legal liability, growing out of
mutual relation. *McGee* v. *Prouty*, 9 Met. 547; *Warner*
v. *Price*, 3 Wend. 397; *Fletcher* v. *Grover*, 11 N. H. 368.
There was never any contract between the plaintiff and
the defendants in this matter. They have no relation to
each other, except what arises out of their mutual rela-
tion to the principal. The question, then, is, in what
character each signed, and what relation they had to Place,
the acknowledged principal. In other words, did these
defendants sign as principals with Place, or as his sureties,
and what evidence was proper to bear upon that point?
Then how can the mere naked statements of Place, made to
Whitehouse and Stackpole, be competent evidence, or the
thoughts, motives and actions of the two last, of which these
defendants were entirely ignorant? The remark Stack-
pole made to Hanson was not competent evidence against
Trickey, and the jury should have been so instructed.
The memorandum of Stackpole should not have been

read. If it was competent for him to look at it, to refresh his memory, it was not competent for him to read it against objections. The effect of such evidence is not destroyed by a remark of the judge, in the course of a charge. If it is not competent it should not be heard. 1 Greenl. Ev. sec. 565; 1 Phill. Ev. 289 (1 C. & H., note 528). We are not able to understand how, from the facts in the case, by any intendment of law, the defendants made Place their agent, and were bound by his acts and declarations. We submit that there are no facts in the case to call for such instructions; that their tendency was to prejudice and mislead the jury, and they are not correct in point of law.

*Christie,* for the plaintiff.

On the face of the note, the plaintiff was surety for the defendants and Place, and entitled to recover against them, unless they showed a defence, which, we conceive, they failed to do. The only thing proved as a defence was, that as between them and Place, they were his sureties. This was not enough. They must show that the plaintiff knew they were sureties when he signed, and not principals, as Place and the note represented them to be. This they did not do, and the plaintiff proved he did not know they were sureties, and believed them to be principals. In *Grafton Bank* v. *Kent,* 4 N. H. 224, the court say: "The rule is, where a maker of a note, who has signed as surety, does not appear, on the face of the paper, to be a surety, he is to be considered and treated as a principal, with respect to all those who have no notice of his real character; but the defendant may show by extrinsic evidence that he made the note as surety only, and that it was known to the plaintiff that he was only a surety." See, for the same doctrine, *Nichols* v. *Parsons,* 6 N. H. 23; *Fernald* v. *Dawley,* 26 Me. 470. See, too, *Wilson* y. *Foot,* 11 Met. 285, where it is said by the court: "The defend-

ant can not prevail in this defence, because the fact that the three signers were sureties does not appear to be known to the plaintiff, and knowledge is not to be presumed in favor of the defendant. If he relies upon it, he must prove it. The parties are to be treated as they have represented themselves, as joint principals." The defence was, that the plaintiff had extended the time of payment, but the doctrine equally applies here, though there is an obiter remark of the judge, that, in a case like ours, the rule does not apply; but no good reason can be given for such a distinction. The remark must have been made on an imperfect recollection of *McGee* v. *Prouty*, 9 Met. 448, where the question was left open. The evidence shows that the plaintiff's agreement was to sign as surety for the defendants and Place, all as principals, as the note and Place both represented, and he believed they were, and not as surety for Place alone. The verbal agreement was the same as was expressed in the note. The defendants, by signing the note as they did, and intrusting the same to Place to be negotiated, constituted him their agent to procure other s'gnatures on such terms as he could, if needed to procure the discount and obtain the money, and are bound by his arrangements, as if present and assenting to them. *Warner* v. *Price*, 3 Wend. 397; *Harris* v. *Warner*, 13 Wend. 406; where *Nelson*, J., says, in the former case, the plaintiff knew when he signed who was the principal, which should be borne in mind in examining that case. By signing as they did, and intrusting the note to Place, they enabled him to deceive the plaintiff as to their real character on the note. And as a loss must fall on the defendants or the plaintiff, it ought to fall on those who have afforded any facility or means of confidence to another to effect a fraudulent purpose. The defendants did this, by not disclosing their real character on the note, and holding out a false one. The plaintiff and Stackpole, instead of signing as sureties for the previous signers, might have guaranteed the note, and thus have given the bank the security

of their names; and then, if they had paid, they could have collected the amount of the defendants. *Langley* v. *Griggs*, 10 Pick. 121. What they did in this case was, so far as the defendants were concerned, the same thing as though they had guaranteed the payment of the note. In neither case are the defendants prejudiced, as they were willing the note should be discounted with only their names and Place's on it. The plaintiff, signing the note as surety for the defendants and Place, did them no wrong, and put them in no worse condition than they had voluntarily placed themselves in, if the bank had taken the note with their names and Place's alone, or if the plaintiff and Stackpole had guaranteed the payment of it. The representations of Place to the plaintiff, when he applied to him to sign the note, as to the defendants being principals on the note, were not offered or admitted to prove that they were so, but to show under what understanding and agreement the plaintiff agreed to sign, and did sign the note, and for that purpose it was admissible.

Stackpole's memorandum was read by the witness without request, and before it was objected to. It was immaterial, and if not, the judge, in his charge, neutralized it.

The evidence as to Stackpole's declarations to Hanson, was admitted as against Hanson, the plaintiff's counsel admitting it was not evidence against Trickey.

If the plaintiff is held a co-surety, and not entitled to recover, it will be contrary to the express agreement, written and verbal, which he did make, and upon one implied by law, which he never made, nor intended to make. The maxim, *expressum facit cessare tacitum*, and fair dealing between man and man, forbid this.

*Wheeler & Hall*, in reply.

The language quoted in *Bank* v. *Kent*, 4 N. H. 224, was used in a case brought by a payee against the makers of a note, where one claimed he was a surety, and·had been

discharged by the conduct of the holder. It had no reference to a controversy between the makers. *Nichols* v. *Parsons*, 6 N. H. 30, and *Wilson* v. *Foot*, were like cases. In the last case the court say: "As between the promisors themselves, a different rule prevails. When one of them is sued, he may prove that he was a surety, though the fact does not appear upon the note, and had not been communicated to a co-surety, because the obligation to contribute is not the result of a contract between them, but rests on the legal liabilities growing out of such relation." It was a solemn decision, and a proper qualification of the point decided, and entitled to full weight as authority. The same reason is stated in *Fletcher* v. *Grover*, and *Boardman* v. *Paige*, 11 N. H. 372, 431; see *Currier* v. *Fellows*, 27 N. H. 366. *McGee* v. *Prouty*, 9 Met. 532, is in point. The court say: "B did not add 'surety' to his name, and might, therefore, be held to a *bonâ fide* holder without notice as principal; but as between the sureties themselves, he may prove he was a surety. A want of knowledge of the fact, on the part of the plaintiff, does not alter his relation to B. They are all sureties." *Warner* v. *Price*, 3 Wend. 397, is in point. It does not appear, as suggested, that the plaintiff there knew the character in which the parties signed, for the court say what passed between Price and the plaintiff does not appear. *Harris* v. *Warner*, 13 Wend. 402, recognizes this case, and they seem directly in point. The plaintiff must establish the fact, that, as to him, the defendants were principals, by showing that they intended to stand as principals as to subsequent signers. *Cutter* v. *Emery*, 37 N. H. 576, and *Warner* v. *Price*. We never solicited the plaintiff to be surety for us, and as he paid without our authority he can not recover of us. *Tappin* v. *Broster*, 1 C. & P. 112; *Child* v. *Mosley*, 8 T. R. 610; *Siles* v. *Laing*, 4 Camp. 81; *Stokes* v. *Laing*, 1 T. R. 20. This plaintiff may not be a co-surety, so the defendant could compel contribution; but that is very different from

the relation of principal and surety, which would render the defendants liable as principal to the plaintiff. *Harris* v. *Warner*, 13 Wend. 402. By intendment of law must be meant "fair and reasonable inference," the term used in *Cutter* v. *Emery;* and this, by the charge, is made a legal inference, we say, erroneously. This legal presumption can not arise from omitting the word " surety." Our authorities before cited show that a signer may show that he was a surety only, though the fact does not appear on the paper. In *Davis* v. *Barrington*, the court say : " No doubt was ever entertained of it." Intrusting it to Place to get it discounted was no unusual authority. It was payable to a particular bank, and could be discounted no where else. Place could not sell it, or pass it to any one else, so as to bind the sureties. *Adams Bank* v. *Jones*, 16 Pick. 574 ; *Allen* v. *Ayers*, 3 Pick. 297; *Prescott* v. *Brinley*, 6 Cush. 233; *Marvin* v. *McCullum*, 20 Johns. 288; *Agawam Bank* v. *Sears*, 4 Gray 95; *Gardner* v. *Walsh*, 85 E. C. L. 82. The defendants could have no intention to make Place their agent for any purpose, certainly not to deceive others, at their risk, for his own benefit. Whitehouse was bound to know that, by law, the defendants might be either principals or sureties; as between him and them they might show they were sureties, and the omission of sureties did not prove they were not such, nor prove them principals. It is his loss, if he relied on presumptions or Place's representations. It is immaterial that the plaintiff might have guaranteed the note; he did not do that. If he had guaranteed without the defendants' request, he could not have recovered of them.

BELL, C. J.* It is a presumption of law that the parties to a promissory note stand to each other in the relations in which the signatures appear. The signers on the face of the paper are taken to be joint principals, unless

* Doe, J., did not sit.

some are designated as sureties; and the signers on the back to be indorsers, in the order in which the names are written, if nothing in the terms of the indorsements indicates the contrary. *Clapp* v. *Rice,* 13 Gray 403. In the case of a *bonâ fide* holder of such a note, without notice, this presumption is conclusive. *Grafton Bank* v. *Kent,* 4 N. H. 224; *Nichols* v. *Parsons,* 6 N. H. 30. But, generally, this presumption is not conclusive as to others, but is merely a *primâ facie* presumption, which stands till the contrary is proved. Whenever it is material, a defendant may show, even against a *bonâ fide* holder of a note, by extrinsic evidence, that he made the note as a surety only, and that this was known to the plaintiff when he took it. 4 N. H. 224; *Artcher* v. *Douglas,* 5 Den. 509.

As between the signers of a note, the legal presumption may be rebutted, by showing what are the actual relations of the parties. If all appear as signers of a note, without distinction, so that they would be presumed to be joint debtors, it may be shown that one of them signed for the accommodation and as the surety of another. *Harris* v. *Brooks,* 21 Pick. 196; *Davis* v. *Barrington,* 30 N. H. 525; *Norton* v. *Coons,* 2 Seld. 41; *Carpenter* v. *King,* 9 Met. 515. If one adds the word principal, or adds nothing to his name, and another adds surety to his, so that, on the face of the paper, they would be taken to be principal and surety, it may be shown, as between themselves, that the apparent surety was the actual principal, and bound to indemnify the apparent principal as his surety. *Ibid. ; Crosby* v. *Wyatt,* 23 Me. 156; *Fernald* v. *Dawley,* 13 Shep. 470; *McGee* v. *Prouty,* 9 Met. 547; 21 Pick. 196.

The acceptor of a bill, or maker of a promissory note, is presumed to be the principal debtor, and the drawer of the bill and the indorsers are to be regarded as *quasi* sureties for them. But as between themselves, it may be proved that either of the signers is the real debtor, and bound to indemnify the others as his sureties. *Pickering* v. *Marsh,*

Whitehouse *v.* Hanson.

7 N. H. 192; *Parks* v. *Ingram*, 22 N. H. 283; *Griffith* v. *Read*, 21 Wend. 502; *Barry* v. *Ransom*, 2 Kern. 462; *McGee* v. *Prouty*, 9 Met. 547; *Weston* v. *Chamberlain*, 7 Cush. 404; *Clapp* v. *Rice*, 13 Gray 403.

Upon the same principle, it is presumed that those who appear to be sureties, or who are proved to be such, are sureties for the principal debtor, and co-sureties for each other; but this is not necessarily the case, and it may, consequently, be shown that any of the sureties, or *quasi* sureties, the indorsers, are not, as between themselves, co-sureties, or liable as indorsers, as their signatures appear, but one is a surety for the other. *Currier* v. *Fellows*, 27 N. H. 366; *Davis* v. *Barrington*, 30 N. H. 517; *Cutter* v. *Emery*, 37 N. H. 576.

And, agreeably to this principle, it has been held that one of those who appear as sureties, or who are proved to be sureties, may be shown to have become surety at the request of another, as where, in *Taylor* v. *Savage*, 12 Mass. 98, the defendant refused to sign at the request of the principal, and the other surety said to him, "Well, if you will not do it for him, do it for me; I will hold you harmless." And, in such a case, the surety thus soliciting the other to sign, will have no claim against him for contribution, but will be bound to indemnify him for any loss he may sustain by reason of signing for him under such circumstances. *Turner* v. *Davis*, 2 Esp. 478; 1 Story's Eq. 476; *Blake* v. *Cole*, 22 Pick. 101; *Apgar* v. *Hiler*, 4 Zab. 812; *Byers* v. *McClanahan*, 6 G. & J. 250; Ad. Eq. 606; 2 Swift's Sys. 152; *Craythorne* v. *Swinburn*, 14 Ves. 160; *Daniel* v. *Ballard*, 2 Dana 296. In the present case, the plaintiff, who, as a surety, claims the reimbursement of the money he has paid, of the two defendants, as his principals, has the *primâ facie* presumption in his favor, resulting from the signatures as they stand on the face of the note. Place, Trickey and Hanson signed their names in that order without any designation of their relations to

each other. *Primâ facie,* they are joint debtors. The plaintiff signed his name under theirs, adding the designation of surety. Until the presumption of law is rebutted by proof, the plaintiff is to be regarded as a surety for the three. *Crosby* v. *Wyatt,* 10 Shep. 156; *Fernald* v. *Dawley,* 13 Shep. 470. This presumption is met and rebutted by the proof that Place was the principal for whose accommodation the note was made and the money obtained, and that he had the whole benefit of the loan; and that the defendants as well as the plaintiff were only sureties for him. 13 Shep. 470; *Warner* v. *Price,* 3 Wend. 397.

To prove, then, that the plaintiff, though as to the bank he was a surety for the same person, and for the same sum as the defendants, was not their co-surety, and liable to contribute with them to the payment of the note; but, on the contrary, was entitled to hold them liable to him as principals for his complete indemnity, it becomes necessary to inquire what facts must be proved.

There is no presumption that a surety assents to be bound as a principal for the whole debt to other sureties, in case his principal is unable to obtain sureties satisfactory to his creditor, subject to the usual rights and obligations of sureties. Nothing in the nature of the contract, or in the usual course of business, would justify such a presumption. The utmost that can be reasonably presumed is, that he is willing to be a co-surety with other equal co-sureties; as where others sign as sureties, without his knowledge, he and they will be held as co-sureties. *Barry* v. *Ransom,* 2 Kern. 462; 3 Den. 130; 9 Met. 547; *Stuart* v. *Vance,* 1 Rob. Va. 169. And very slight evidence tending to show that it was understood, at the time of the signing, that certain definite persons were to be the sureties, would probably be sufficient to rebut that presumption.

It is not enough to show that a party who is applied to

to become a surety, after other sureties have signed, added to his name surety for the above, or for the former signers, or entered into a contract by which he bound himself to pay on failure of the others, to make himself a surety for those who have signed before him, or to make them principals as between him and them.  By signing, they assume the liabilities of sureties only, and no third person, by his own act merely, without their consent, can increase or change, to their disadvantage, the obligations they have assumed.  They can be made liable as principals, on a note they have signed as sureties, by their own act alone. The effect, then, of such a mode of signing is neither to make the signer a co-surety with previous signers, and so entitled to contribution from them, nor a surety for them, as between them and him, and so entitled to an indemnity from them.  The terms of his subscription exclude the former. *Harris* v. *Warner,* 13 Wend. 400.  He is not surety for them, because it is not their debt, and they have not made it theirs by any act of their own; he has not signed it at their request, or for their accommodation. He is presumptively a separate and sole surety, for the debtor, at whose request he signed, entitled to look to him only for his indemnity, and by his own act disabled to claim that he is a co-surety, and entitled to contribution from other sureties.  *Norton* v. *Coons,* 3 Den. 132; *Craythorne* v. *Swinburn,* 14 Ves. 160; *Harris* v. *Warner,* 13 Wend. 400; *Langley* v. *Griggs,* 10 Pick. 121; 1 Story's Eq. 498.

It will not be understood from the fact that a party signs as surety, after several others have signed, that he claims to be surety for all who have signed before him. His signature, in that form, merely imports that he is a surety, and not a principal, and that he is surety for whoever is principal in fact, and a co-surety with those who are sureties.  To that extent it affords only a presumption, which may be rebutted, as has been said.  He can not recover any more than a contribution from those who are

proved to be, like himself, sureties. *Robinson* v. *Lyle*, 10 Barb. 512; *Woodworth* v. *Bowes*, 5 Ind. (Port.) 276; *Sisson* v. *Barrett*, 6 Barb. 200; S. C., 2 Comst. 406; *McGee* v. *Prouty*, 9 Met. 547.

The party, then, who asserts that the sureties for the principal debtor have become principals as to him, must prove that he assumed the relation of surety at their request and for their accommodation. In the language of *Savage*, C. J., in *Warner* v. *Price*, 3 Wend. 399, "a state of facts must be shown to the court from which it shall appear positively, or by legal intendment, that the defendants intended, as to the subsequent signer, to stand in the character of a principal." This case was very closely parallel to the case before us. It was a note, signed by three persons, as sureties for Price, the first signer, for his sole benefit and accommodation, without designation of their relation as sureties, to be discounted at a bank. The bank refused it without other names. The plaintiff, at Price's request, signed it, adding surety to his name. He had it to pay, and brought an action against Price and the three first signers as principals, but it was held the action could not be maintained.

The same point was decided in *Sisson* v. *Barrett*, 2 Comst. 406; S. C., 6 Barb. 200. A promissory note was made by A, B and C, A being the principal debtor. C, the last signer, added surety to his signature. It was held that he must show that he was a surety for B, by evidence extrinsic to the note, before he could treat him as a principal debtor.

In *McGee* v. *Prouty*, 9 Met. 547, A, B, C and D signed a promissory note. C and D only added surety to their names. D paid the note, and sued A and B, jointly. It was held that B might prove by parol that he signed the note as surety for A, and as it appeared that C and D signed at the request of A only, the action could not be maintained.

*Fernald* v. *Dawley*, 13 Shep. 473, was decided in the same way, upon the doctrine of *Warner* v. *Price*, that those who sign as sureties shall be held co-sureties, unless it appears that the defendants intended to stand as principals to the subsequent signers.

In *Harris* v. *Warner*, 13 Wend. 400, the case of *Warner* v. *Price*, 3 Wend. 397, was affirmed; and the principle of that decision was adopted by us in *Cutter* v. *Emery*, 37 N. H. 576. See *Beaman* v. *Blanchard*, 4 Wend. 432.

The fact that one surety signed as such, substantially at the request and for the accommodation of another, is necessary to be proved, and is all that is required to bar the latter of his action for contribution, and to compel him to indemnify the former for what he may be compelled to pay. *Ibid.;* 1 Story's Eq. 476; Ad. Eq. 606; *Taylor* v. *Savage*, 12 Mass. 102; *Daniel* v. *Ballard*, 2 Dana 296; *Byers* v. *McClanahan*, 6 G. & J. 256; *Blake* v. *Cole*, 22 Pick. 101; *Apgar* v. *Hiler*, 4 Zab. 812; *Turner* v. *Davis*, 2 Esp. 478; *Thomas* v. *Cook*, 8 B. & C. 728.

Having thus seen what is necessary for the plaintiff to prove, in order to maintain his action, we are now to see if the evidence of the plaintiff was competent to establish the fact that the plaintiff signed this note for the accommodation of the defendants, at their request, or upon any agreement by them to indemnify him.

The plaintiff testifies that he was applied to by Place to sign his name, but he does not say that he was applied to by either of the defendants, or that Place claimed to act for them, or that he had any authority for them, or that he named them in any way. He says the defendants' names were on the note. He did not know they were sureties. If he had known it, he should not have signed. Stackpole represents the transaction between Place and himself in a similar way, except that Place asked him to sign with him and the defendants as principals.

The defendants say they signed for Place's accommoda-

tion alone, at his request. They do not state that they had any conversation with each other, or with White-house, or Stackpole, or that they gave any authority to Place to act for them, except what may be implied from signing the note.

This evidence falls entirely short of proving that the plaintiff signed as surety, at the request of the defend-ants, or either of them, or that the defendants assented to stand in the relation of principals as to him.

The charge to the jury did not place the question on the ground before stated, that the plaintiff must show, in order to charge the defendants, that he signed at their re-quest, either made personally or through some agent for that purpose.

It was said, "if the defendants, having signed their names to this note with Place, as they did, allowed him to take the note and go out into the market, or to the Savings Bank, for the purpose of raising money on it, they thereby, by legal intendment, made him their agent for that purpose, and adopted his acts and declarations, and would be bound by them. Hence the representations made to the plaintiff by Place, in order to obtain his aid to effect this purpose of raising money, became evidence for the jury, and if they believed they were made, might justify them in charging the defendants in this case."

For the reasons already assigned, we are unable to assent that the statements of Place, if authorized, were enough to charge the defendants. They fall short of expressing, in any form, any desire of the defendants that the plaintiff would sign the note. Place expressed his own wish, but did not pretend to speak for them. And he did not represent to the plaintiff that they were principals in any other way, than by presenting to him the note signed by them, without the addition of surety.

By giving him the note, the defendants authorized him to represent whatever the note stated, that is, that they had

signed the note in such a manner that they would be taken to be principals, if they did not prove they were sureties. Such information, if given upon due authority, could have served only to promote inquiry. It would be a strong assumption that the plaintiff, upon being told by Place that the defendants probably, or presumptively, signed as principals, could take it for granted, without inquiry, that they did so.

Stackpole's memorandum was introduced in aid of his memory. He did not know the date, but had a note of it, which he knew to be correct. In such a case, the memorandum, with the oath, is evidence. *Haven* v. *Wendell*, 11 N. H. 112. The caution of the judge, that it was of weight only as to the time, was all that was necessary to be said of it.

The declarations of Hanson were inadmissible, but immaterial.

The declarations of Place were properly admitted as part of the *res gestæ.*