JOHN BYERS *vs.* JOHN McCLANAHAN, Jr.—*December*, 1834.

Upon a bill filed by one joint surety against another for contribution, where the principal obligor and the other sureties are insolvent, it is unnecessary to make them parties for the purpose of contribution.

A signature and seal attached to a blank piece of paper, for the purpose of having a bond thereafter written upon it, will not bind the party as an obligor in such bond: but if a party so signing and sealing, after the, bond is filled up, adopts it as his bond, it is sufficient.

Such adoption is a question of fact, to be collected from circumstances; and a subsequent acknowledgment of the signature as his hand writing, to a party making the inquiry, without any intimation that he did not consider himself bound by the bond, would be sufficient proof of such adoption.

Delivery is essential to the legal validity of a deed; but such delivery may be either actual or verbal. It is sufficient that there be an intention, or assent of the mind to treat it as a deed, to clothe it with the attributes of a legal instrument.

Where the defendant becomes joint security with the complainant, at the request of the latter, he is absolved from all responsibility to make contribution in his character of co-surety.

APPEAL from the equity side of *Washington* county court.

The appellee on the 11th of April, 1831, filed his bill on the equity side of *Washington* county court, to compel the appellant as his co-surety, to contribute his proportion of the money paid by the appellee, in discharge of a bond to one *Lane,* in which they, with others, were bound as sureties for *Matthew Lind.*

Upon the pleadings and proofs, which are fully stated in the opinion of this court, the county court (T. BUCHANAN, A. J.) decreed, that the defendant pay to the complainant, one-half of the amount paid by him as one of the sureties of *Lind,* and his costs. From this decree the defendant prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, DORSEY, and CHAMBERS, J's.

*J. J. Merrick* and *Anderson,* for the appellant, contended.
1. That a paper signed, and with scrolls attached by way

of seals, and so delivered, the penalty and condition of the bond being subsequently written, is not a valid deed. *Perkins*, 53. 4 *Com. Dig. (Deed A.)* 1 *Ohio Rep.* 368. 1 *Shep. Touch.* 54. *Thomas' Coke*, 274, *(note* 1.) 2 *Stark. Ev.* 481. 4 *Rand.* 177.

2. That such a paper delivered with authority to fill it up as a bond for $10,000, but filled up with another and larger sum, is not valid, without a subsequent acknowledgment and delivery.

3. If however the bond was a valid instrument, still the appellant is not responsible to the appellee for contribution, as the obligation was incurred at his instance and request. A surety who induces another to become a co-surety, cannot call on him for contribution. 2 *Esp. N. P. C.* 479. 2 *Stark. Ev.* 102. 12 *Mass. Rep.* 102.

4. All the parties to the bond should have been before the court. 2 *Chit. Eq. Dig.* 1171.

*Price,* for the appellee.

1. The first and second points present the same question, and that is, whether the bond was legally executed. When the bond was presented to *Byers,* and he acknowledged the signature and seal to be his, he recognized it to be a binding instrument upon him, whether he knew the contents or not. It was a valid acknowledgment and delivery. *Shep. Touch.* 58, *(note* 2.) *Ib.* 56, 57. 12 *Johns.* 536. A bond signed and sealed with material parts in blank, afterwards filled up, is good. 9 *Cranch*, 36, 37. 4 *Johns. Rep.* 58.

2. There is nothing in the circumstances of this case, which can deprive the appellee of the right to demand contribution. 2 *Bos. and Pul.* 270. *Act* 1763, *ch.* 23, *sec.* 8. That part of the answer which alleges that the appellant signed the bond at the request of the appellee, is not responsive to the bill, and consequently must be proved, and there is no evidence of any such request. It is certain that the appellee himself never did speak to the appellant, on the subject of this suretyship; nor did he ever autho-

rise any one in *his name* to make such application to him. The utmost that can be made of the proof is, that he told the principal in the bond, that he might call on the appellant in his, the principal's name, but he certainly never authorised an application to him in his own name, and unless he did so, he is not precluded from calling for contribution. The same degree of persuasion which will deprive a surety of the right to compel contribution from a co-surety, would entitle the latter, if made to pay the money, to a full indemnity to the former. 2 *Esp. N. P. C.* 478. *Theo.* 158. 1 *Law Library*, 1. 8 *Barn. and Cres.* 728. 15. *Serg. and Low.* 333.

3. The other parties to the bond being shown to be insolvent, were not necessary parties to the suit. 16 *Ves.* 326. 3 *Atk.* 406. 1 *Cox.* 275. 3 *Com. Dig.* 374.

STEPHEN, J., delivered the opinion of the court.

This is an appeal from *Washington* county court, sitting as a court of equity. The bill was filed by the appellee, against the appellant, to compel him to contribute his proportion of the money paid by the complainant, to satisfy a bond debt, for the payment of which they were joint sureties, together with certain other persons, for a certain *Matthew Lind*, to a certain *Thomas C. Lane*. The debt was contracted by *Lind*, to *Lane*, for the purchase of a quantity of bank stock. The bill charges the payment of a considerable part of the money by the complainant, and that *Lind*, the principal, and all the other sureties, except the appellant, are insolvent. The bill claims from the appellant, by way of contribution, a moiety of the money paid by the appellee, who resists the demand upon several grounds of defence. He contends in the first place, that he is not liable to contribution, because he never executed the bond as surety, and that the same is not therefore legally obligatory on him. Secondly, that if under the circumstances it is to be considered as his bond, he executed the same, and incurred his liability as surety, at the request of the com-

plainant, who is therefore not legally entitled to call upon him to make contribution.   And lastly, that if he is responsible in the character of a co-surety, the complainant is not entitled to recover, because, he has not brought the necessary and proper parties before the court.

The first question is the only one which has created much difficulty in the decision of this case.   It is, whether the bond under the circumstances attending its execution, can be considered his deed, and consequently legally binding upon him.   When he wrote his name and affixed his seal to the paper, it was at the solicitation of *Lind*, the principal, and with an understanding, that the bond was thereafter to be written upon it, the paper to which his signature and seal were attached being at that time perfectly in blank. In that state it was carried to *Lane*, the obligee, by *Lind*, the principal, who, with the consent of *Lind*, entered the writing obligatory upon it, but refused to accept it, until it had been filled up, and acknowledged by all the obligors as their act and deed.   For the purpose of obtaining such acknowledgments, the bond, thus written in full, was placed in the hands of an agent mutually agreed upon by *Lind*, the principal, and *Lane*, the obligee.   The agent thus authorised, afterwards presented the bond to the appellant, for the purpose of obtaining his assent and recognition of it, as his act and deed, and whether upon such presentation it received the sanction of the appellant as his bond, or writing obligatory, is the question; for that it was not legally binding upon him, until it received his assent and acknowledgment, after it had been so written in full, there can, we think, be no doubt.   The law being well settled by the earliest writers in our legal histories, that a signature and seal attached to a blank piece of paper, for the purpose of having a bond thereafter written upon it, will not bind the party as an obligor in such bond.   For the proof of this principle see *Shep. Touch.* 54, where it is said, "every deed well made must be written, i. e. the agreement must be all written before the sealing and delivery of it; for if a man

seal and deliver an empty piece of paper or parchment, albeit he do therewithal give commandment, that an obligation or other matter shall be written in it, and this be done accordingly, yet this is no good deed." To the same effect see 1 *Ohio Rep.* 372, where the court say, "the ancient law was well settled, that a valid deed could not be made by writing it over a signature and seal, made upon a blank or empty sheet of paper." We know of no decision by which this ancient doctrine is overruled.

The cases cited by the plaintiff's counsel are of promissory notes not under seal, and of deeds, where all the material parts were written at the time of making the signature and seal.

*Byers* in his answer states, that *Lind* called on him with the said paper, stating that he came at the instance of the complainant and *John McClanahan of James*, with their request that he would join them as sureties for the said *Lind*, in a bond to *Lane* for the payment of $10,000, and not of $10,500, as the bond was afterwards written, and that he wrote his name and affixed his seal with that understanding; he denies that he ever did acknowledge it as his bond after it was written, but he admits that after the bond was filled up, a certain *James Watson* called on him at the instance of *Lane*, as he stated, and shewed him the said bond, and pointing to his name asked him if that was his hand writing, and he admitted that it was; but he did not read or examine the instrument, nor did he acknowledge it to be his bond, as stated in complainant's bill.

*Lind*, the principal in the bond, states in his deposition, that the paper was signed and sealed in blank; that the representation made to *Byers* was, that the bond was to be filled with the sum of $10,000, and that *Byers* signed it under that understanding, as well as he recollects. That the additional sum of five hundred dollars was inserted in the bond, in consequence of *Lane's* having five hundred dollars more coming from the bank, which he wished to have inserted or included. It is proper here to remark,

that if such was the understanding between *Byers* and *Lind; Lane,* the obligee, was not a party to such agreement, nor was he under the circumstances of this case bound by it.   If *Lind* violated the confidence reposed in him by *Byers,* he alone is responsible for such violation of good faith, and *Lane,* who was a perfect stranger to the contract cannot be affected by it.   The proof is, that a blank piece of paper with the signature and seal of *Byers* attached to it, was carried by *Lind* to *Lane;* that *Lane* wrote the bond upon it with the consent of *Lind,* conditioned for the payment of $10,500; that the bond thus written was at the request of *Lane,* with *Lind's* acquiescence, carried by *Watson* to *Byers,* for the purpose of getting him to acknowledge it as his bond; and *Watson* proves that *Byers,* when the bond was presented to him, acknowledged his hand and seal, over which the same was written ; he swears he cannot recollect whether he acknowledged it as his bond, either in words or substance, nor can he say whether he read it, but he made no objection to it as his bond.   He further proves expressly, that *Byers* subsequently told him he knew the contents of the bond when he presented it to him.   *Byers* admits in his answer, that *Watson* informed him that he came with the bond at the instance of *Lane,* and that when the bond was presented to him by *Watson,* he acknowledged the signature to be his hand-writing.   If he knew, as he admits he did, that *Watson* came to him with the bond, as the agent of *Lane,* for the purpose of getting him to acknowledge his seal and signature, the conclusion was natural and irresistible, that the object of his visit was to get from him such an acknowledgment, as would make the bond legally obligatory upon him.   If he did not mean to be bound by his signature and seal, and to consider the bond as valid and binding upon him, it was his duty so to have declared at the time it was presented to him.   He must have known the object of *Lane* to have been, to get such an acknowledgment as would make it legally efficient and obligatory; which circumstances, we think, amounted

in legal construction to an adoption of the bond, as his act and deed, and a delivery of it, after it had been signed and sealed, and filled up. It is true, that delivery is essential to the legal validity of a deed; but such delivery may be either actual or verbal, that is, by doing something and saying nothing, or by saying something and doing nothing. *Shep. Touch.* 57.

A deed then, it is clear, may be delivered by words, and no particular form of words is essential for such purpose. It is sufficient that there be an intention, or assent of the mind to treat it as his deed; to clothe it with the attributes of a legal instrument. Can there be a doubt then, that *Byers* meant so to treat it, when he declared to the known agent of *Lane*, that it was his seal and signature, especially when he knew, as he must have known, that the object of *Lane* was to get from him such an acknowledgment as would make it legally obligatory. We think, if such was not his intention, good faith and fair dealing required at his hands an explicit declaration to the contrary. We must therefore come to the conclusion, that the conduct of *Byers* was sufficient to make the bond legally efficient, and to bind him to the performance of all the stipulations contained in it. But it is contended on the part of *Byers*, that if under the circumstances, the bond is to be considered as his act and deed, he is not liable to contribution, because he became the surety of *Lind*, at the request of the complainant. If such was the fact, the legal principle unquestionably is, as contended by him, and that he is absolved from all responsibility to make contribution, in his character of co-surety.

In 1 *Law Lib.* 159, the law is stated to be, "that if one becomes surety at the request of his co-surety, he is not in general liable to the latter for contribution; and consequently it would seem, that in case the creditor obliges him to pay, he is entitled to complete indemnification from the latter." The legal principle being clear and indubitable, his liability depends upon a question of fact, which must be de-

cided by the proof in the cause. The testimony, we think, clearly demonstrates, that he became surety in the bond, not at the request of the complainant, but at the solicitation of *Lind*, the principal. It is true, he states in his answer, that it was at the request of the complainant, that he became a surety in the bond, but this allegation in his answer, not being responsive to the bill, is not evidence in his favor, and is clearly disproved by the testimony of *Lind*, by whom he was applied to for that purpose. The interrogatory propounded to *Lind* upon this subject is in the following words: "Did or did not *John McClanahan, Jr.*, the complainant in this cause, request or desire you to apply to *John Byers*, the defendant, to become one of your sureties, and did you, or did you not, tell the said *Byers*, when you so called upon him, that *John McClanahan, Jr.*, the complainant, requested or desired you to call upon him to become one of your sureties?" To this interrogatory, he answered in the following words: "that it was at the desire of the present plaintiff, and *John McClanahan of James*, that he had applied to *Mr. Byers* to be one of his sureties in the bond, and that he had stated the matter so to said *Byers*. He does not recollect of stating to *Mr. Byers* that it was at the instance of the present plaintiff, any more than of *John McClanahan of James*, that he had called on him for security, for he always considered the latter as having rather the lead in that contrivance." This testimony of *Lind* proves nothing more than that it was at the suggestion of the complainant, that he applied to *Byers* to become one of his sureties; and that he so stated to *Byers*, when the application was made; he did not inform *Byers* that he was authorized by the complainants to make the request in the name of the complainant, but that he, *Lind*, called upon him to become one of his sureties at the instance of the complainant. It is therefore clear beyond controversy, that it was at the request of *Lind* himself, that *Byers* united as surety in the bond, and not at the request or solicitation of the complainant. The true construction of the evidence

establishes nothing more, than that he was moved, or in-
duced by the complainant to make the application in his own
name, and not in the name, or at the request, of *John
McClanahan, Jr.*   The defendant then having failed in es-
tablishing this ground of his defence, it only remains to
consider the objection of the want of proper parties to the
suit.   On this part of the case, it is contended by the de-
fendant, that the principal and other sureties in the bond,
ought to have been made defendants; and that the omission
to make them parties is fatal, and decisive against the
complainant's recovery.   It is only upon two grounds that
it can be contended, they ought to have been parties to the
suit, either for the purpose of assisting in taking the account,
or of making contribution towards the complainant's in-
demnity.   In this part of his defence, we think the defen-
dant has also failed.   The evidence proves most satisfacto-
rily, that it was wholly unnecessary to make them parties
for either of those purposes.

   It is fully established by the testimony in the cause, that
at the time the bill was filed, both principal and sureties were
entirely insolvent, and unable to contribute in the smallest
degree to the complainant's reimbursement.   To this fact,
the testimony adduced is full and ample; the making them
parties therefore, for the purpose of contribution, would
have been an act wholly nugatory and unavailing.   It was,
we think, equally unnecessary to make them parties for the
purpose of assisting in taking the account, because all the
payments which were made by any of the parties, are proved
by the attorney into whose hands the bond was placed, for
the purpose of bringing suit upon it; and there is therefore
not the slightest reason to believe, that any benefit would
have resulted from inserting them in the bill as parties, in
relation to the taking of the account.   In 3 *Atkins.* 406,
407, the lord Chancellor says, "the general rule of the
court to be sure is, where a debt is joint and several, the
plaintiff must bring each of the debtors before the courts,
because they are entitled to the assistance of each other in

taking the account; another reason is, that the debtors are entitled to a contribution, where one pays more than his share of the debt." As to taking of the account, it is quite out of the case, by the admission of the defendants, that the bond is not paid, nor any part of the principal and interest; so that here is no ground to make the representative of *Watson* a party, in order to assist him in taking the account. The other pretence is in order for a contribution. It is admitted by all the answers, that *Watson* is dead insolvent, and therefore differs from the case of *Ashurst vs. Eyre*, determined before me upon a plea. For though there was an admission of insolvency in that case, yet it did not appear whether the principal or interest might not have been paid by the co-obligor, who was not before the court, and that was the reason of allowing the plea. These principles, which received the sanction of that distinguished Chancellor, *Ld. Hardwicke*, clearly shew, that the objection raised for want of parties, cannot be sustained; and in every view which we have taken of this case, we think the decree of the court below was correct, and that the same ought to be affirmed.

**DECREE AFFIRMED WITH COSTS.**