WILLIAM YOUNG, *vs.* JAMES LYONS, WINDHAM ROBERTSON, AND OTHERS.—*December*, 1849.

Where there are several sureties, and any of them become insolvent, those who pay the whole debt, can compel contribution, in equity, from the remaining solvent sureties, towards the entire debt paid.

Where the relief sought is common to all the plaintiffs, and constitutes but one subject matter of complaint against the defendant, the objection of multifariousness will not hold.

Five sureties in a bond of $50,000, paid the entire debt, each contributing the sum of $10,000, and then filed a joint bill in equity against another co-surety, for contribution.   HELD: that the objection of multifariousness to such a bill, could not be sustained.

All parties, obligors and obligees, are required to be made parties to the suit; but an exception to this rule is, that if either of the obligors, principal or surety is insolvent, he need not be made a party.

The allegation that four co-sureties were insolvent, and unable to pay *at the time the bond became due*, is not a sufficient excuse for not making them

parties to a bill filed nearly five years afterwards, and the omission to allege insolvency at the time of filing the bill, is fatal on demurrer.

The fact of insolvency, at a particular time, being admitted, does not negative the conclusion, that the parties may have become solvent four years afterwards.

The allegation, that a party "was utterly insolvent and unable to pay the bond, or any part thereof to the obligee, or his executor, but, on the contrary, previous to the maturity of the bond, had become *utterly and hopelessly* insolvent, and that he was dead at the time of filing the bill," is a sufficient excuse, upon demurrer, for the omission to make him or his personal representative, a party to the proceedings.

A demurrer admits the truth of the facts stated in the bill, but does not admit the conclusions of law drawn from them, although they are alleged in the bill. It is not necessary to state facts by positive averment, if the terms be reasonably certain in their import, they are admitted by the demurrer.

Appeal from the equity side of *Washington* county court.

The appellees, five in number, together with the appellant and four others, became sureties of *John Heth,* in the following bond:

"Whereas, the late *Beverly Randolph* had agreed with *John Heth* to sell to him five hundred shares of the *Black Heath Company of Colliers,* for the sum of $50,000; and whereas, it hath become necessary for the said *Heth* to obtain the possession and control of said stock, with full and complete authority to sell and transfer the same, and to prevail with *Charles H. Randolph,* executor of *Beverly Randolph,* to transfer and set over to him, the said *Heth,* the stock aforesaid, he, the said *John Heth,* doth hereby undertake, on his part, and the undersigned do also undertake on their parts, for the said *Heth,* as his sureties, that if the said *Charles H. Randolph,* executor of *Beverly Randolph,* shall and will transfer and set over to the said *Heth* the stock aforesaid, that he, the said *Heth,* shall and will, on or before the first day of January, 1841, reconvey the whole of the said stock to him, the said *Charles H. Randolph,* executor aforesaid, or that the said *Heth* shall and will, on or before the said first day of January, 1841, pay, or cause to be paid to the said *Charles H. Randolph,* the sum of $50,000, being the purchase money of the said stock. In witness whereof, the said *John Heth,* and the other parties to these presents,

have hereunto set their hands and seals, this 26th day of November, 1839.''

*Heth* having failed to comply with the condition of the bond, the appellees paid the whole amount thereof, with interest, and on the 23rd of August, 1845, filed their bill in equity against the appellant, one of their co-sureties, for contribution. The allegations of this bill are sufficiently stated in the opinion of this court. The defendant demurred, on the grounds: 1st. That the complainants had remedy at law. 2nd. That the principal obligor, and the four other co-securities, should have been made parties. And 3rd. That the bill is multifarious, in blending in one suit several separate and distinct rights, which are proper to be enforced by separate and several suits. The court (MARTIN, C. J.,) overruled this demurrer, and the defendant appealed.

The cause was argued before DORSEY, C. J., CHAMBERS, MAGRUDER, and FRICK, J.

By WM. SCHLEY, for the appellant, and
By McKAIG, for the appellees.

FRICK, J., delivered the opinion of this court.

The present complainants, with *five* others, became the sureties of *John Heth*, in a bond for the sum of $50,000, in which ''they undertake on their parts, as sureties for said *Heth*, that on the failure on his part to perform the stipulations of the bond, he shall, on or before the 1st day of January, 1841, pay to the obligee the said sum of $50,000.'' The bill states, that when the bond became due, and upon his failure to comply with its stipulations, the said *John Heth* was utterly insolvent, and unable to pay the $50,000, or any part thereof; that before the maturity of the bond, he had become utterly and hopelessly insolvent, and unable to pay the said sum to *Charles H. Randolph*, (the obligee,) in his lifetime, or to his executor, after his death; and that the said *John Heth*, a citizen of the State of *Virginia*, is now deceased. The bill further states,

that *at the time the bond became due* and payable, *four* of the other co-sureties in the bond were also insolvent, and unable to pay any part or portion of the said sum, or to contribute thereto, and that they, the complainants, have been compelled, and have paid the whole of said sum of $50,000, each having paid one-fifth of the whole sum, with interest, and they now claim that the defendant (as the only other solvent security,) may be adjudged to pay to them the one-sixth part of the said $50,000, or to each of them one-fifth of the said one-sixth part of the whole sum, with interest.

To this bill the defendant demurs, and for cause of demurrer alleges: 1st. That the bill is multifarious in this, that five several and distinct causes of action are blended in one suit; and 2nd. That the bill is defective, for want of parties, inasmuch as the personal representative of the principal debtor and the four co-sureties named in the bill, ought to have been parties to the suit, and there is no sufficient reason set forth in the bill, for the omission to make them parties thereto.

It is not contended here, that these complainants have no relief in equity, but that in analogy to their rights at law, where a *joint* action could not be maintained, in chancery, also, a separate bill must be filed by each of them, for his separate *quota* of contribution. This is not a necessary consequence, for the jurisdiction in chancery is less restricted than at common law; and, for that reason, in cases like the present, for contribution, is the proper resort upon a *joint* bill. At law, the plaintiff could recover no more than an aliquot part of the amount paid by him, reference being had to the number of sureties, and, according to this doctrine, neither of the parties here could recover more than one-tenth, even where it is admitted that other of the co-sureties are insolvent. *Cowell vs. Edwards*, 2 *Bos. & Pul.*, 268. It is true, that more recently it has been decided, "that if one of several sureties be insolvent, contribution at law, as well as in equity, will be according to the number of those who are solvent." 2 *Bailey*, 397, 401. 11 *New Hamp.*, 432, 440. But, without stopping to inquire which of these authorities would avail in our courts,

it is enough to say, that in either case, it could only be made available by *separate actions* at law.   In equity, however, it is established, and uncontroverted, that where there are several sureties, and any of them become insolvent, those who pay the whole debt can compel contribution from the remaining solvent sureties towards the entire debt paid.   1 *Ch. Rep.*, 34.   See, also, *Byers vs. McClanahan*, 6 *G. & J.*, 250.   Yet it is here objected, that each of these complainants having a separate and distinct interest, and without showing any joint right or interest in the sum demanded, or without averring that the sum was paid out of joint funds or property, can only enforce their rights by separate and several suits.   We are told that the rule in *Story's Eq. Pl.*, sec. 279, applies here, "that where there is a joinder of plaintiffs, who claim no common interest, but assert distinct and several claims against one and the same defendant," the objection of multifariousness is well taken.   But this must unquestionably refer to claims distinct and several in their *nature and character;* and the illustration given proves it so:   "If two plaintiffs should, in one bill, bring a joint demand and a several demand against the same defendant, it is multifarious."   The incompatibility of these demands is apparent.   They are dissimilar both in form and character.   Not so, where the relief sought is common to all the plaintiffs, and against the defendant, constitutes but one subject matter of complaint.   By paying one-sixth of the whole sum, the defendant here relieves himself of all the complainants; and it might more justly be considered vexatious than otherwise, to distribute such a claim into as many suits as there are claimants.   At all events, it is not a fair subject of objection, by the defendant, that the suit is so framed as to occasion him the least possible expense and inconvenience, if otherwise, it violates no settled principle or practice in equity.   Cases may be found, where the interests of the plaintiffs were distinct, and yet of a similar nature against the defendants, in which the objection of multifariousness has been disallowed.   *Story's Eq. Pl.,sec.* 535. 3 *Paige,* 320.   The courts, in deciding upon these objections, "seem to have considered what was convenient in particular cases

rather than to have attempted to lay down any absolute rule'' for all cases. *Note to sec.* 278, *a.* Even in a case where there existed no privity of contract, where the sureties were different parties, and bound by three different bonds, but all for the same principal and the same engagement, a surety who has paid one of the bonds, was allowed to recover contribution in a bill filed against the other, as " the result of general equity, and on the ground of equality of burthen and benefit." *Deering vs. The Earl of Winchelsea,* 2 *Bos. & Pul.,* 270.

The case here is predicated upon the *privity subsisting between all the sureties in one bond,* and the money raised by the five complainants, for the payment of it, was, by every reasonable and fair construction, a joint fund. Each having advanced $10,000, amounting in the whole to $50,000, is it not obvious that they must have united together, and agreed, in equal proportions among themselves, to liquidate the precise amount of the bond, reserving against the recusant sureties their claim for contribution? The bond was for a specific sum, and the several amounts contributed by them, made but one fund, which, by the joint action of the parties, satisfied the bond. They now claim that the defendant shall pay his proportion of this sum as the sixth solvent surety, to be *afterwards* distributed to them according to the respective amount which each had contributed towards the liquidation of the bond. Such, whatever its form, would be the character of the decree in the premises. Suppose the sums advanced by each had been unequal, yet altogether constituting the whole amount, would it not be competent for such of them as had paid more than their just proportion, to bring all the solvent parties into chancery, for an adjustment of the account, and an equitable contribution among them? If so, how can it alter or affect the principle of adjustment among these sureties, that the several contributions by the complainants, were equal in amount on the part of each and all of them? It did not the less constitute one fund. All the sureties were jointly bound, and five of them jointly paid the bond. Each was also separately bound for the whole, and the present complainants having paid, between them, the precise

amount of the bond, must necessarily have concurred in the arrangement, and constituted a fund to which they are now entitled to call upon the others to contribute, to their relief.

This view may be safely urged as the only reasonable interpretation of the act, and the intent of the complainants; and the argument in the cause concedes, that where there is one common intent and object, and the parties are all jointly concerned, and the interest of one is not to be distinguished from the other, while the relief sought by each is of the same subject matter, and not different in its nature and character, the objection of multifariousness is removed.   To exact five separate suits in a case like this, would not only lead to multiplicity of actions, but would, in fact, be oppressive upon the defendant himself.   If such a course had been here pursued, each complainant claiming separate contribution upon the same subject matter, arising from unity of interest and obligation, each bill alike in form and substance, can it be doubted that the court would have directed a consolidation of them, if only to avoid unnecessary costs and litigation?   The objection, therefore, of multifariousness, is not sustained.

The remaining question is, whether all the *necessary* parties to the bill have been brought to the notice of the court; four of the co-sureties being omitted under the averment, "*that at the time the said bond became due and payable,* the said co-sureties in the bond were insolvent, and unable to pay any part or portion of the said $50,000, or to contribute their proportion?" All parties, obligors and obligees, are required to be made parties to the suit.   But an exception to this general rule is, that when either of the obligors, principal or surety is insolvent, he need not be made a party.   *Story's Eq. Pl., sec.* 169.   Is the fact of an insolvency here sufficiently alleged, so as to make it conclusive upon demurrer?   In other words, will the case stated in the bill, entitle the complainants to a decree?   It is alleged that these parties were insolvent and unable to pay at *the time the bond became due,* in January, 1841.   The complainants filed their bill in August, 1845; and is the inference fair and sound, that the insolvency and inability of these co-

sureties to contribute any portion, continued and existed at this period? Such inference is necessary, in order to excuse the omission to make them parties to the bill. The demurrer admits the truth of the facts stated in the bill. "It does not, however, admit the conclusions of law drawn from them, although they are also alleged in the bill." *Story's Eq. Pl.*, *sec.* 452. "It may not be necessary to state the fact by a positive averment. If the terms be reasonably certain in their import, they are admitted by the demurrer." *Ibidem, sec. note* 3. Can such be said to be the reasonable import of this averment, that as they were insolvent at the time the bond was payable, they were necessarily so at the time of filing the bill, nearly five years afterwards? Is it sufficient to aver, that others, otherwise necessary parties to the bill, were insolvent four years before the filing of the bill? Such, certainly, is the true import of the terms "that they were unable to pay or contribute, at the time the bond became due." And it is not a necessary consequence, or admission by the demurrer, that they continued utterly insolvent up to the time of the filing of the bill, and unable to contribute any portion of their *quota* to the relief of the complainants. It can scarcely be maintained, that the inability which existed in January, 1841, attached by fair and irresistible inference and deduction, four years after, and is a deduction so strong as to preclude a traverse or denial of it. It may be, perhaps, a possible presumption, but certainly not irrebuttable; and the fact itself, being the material one which is set up to excuse the omission, it ought here to be so distinctly introduced as to exclude all conclusion to the contrary. And the fact admitted, that they were unable to pay or contribute at one particular time, does not negative the conclusion, that it may have been otherwise, at another period, separated by years. By the proper construction of the language, it would rather imply that they were so, and might, in the intermediate time, have acquired the means of contribution. At all events, the allegation is not brought down to the period of filing the bill, in terms, or by any sound legal inference from the averments of the bill, and the omission is fatal in its present form.

With respect to *Heth*, the principal in the bond, the averment of his insolvency is deemed sufficient. It is alleged, with regard to him, " that he was utterly insolvent, and unable to pay the sum, or any part thereof, to the obligee, in his lifetime, or to his executor, after his death; but, on the contrary, previous to the maturity of the bond, had become *utterly* and *hopelessly* insolvent." The bill further states, that *Heth* was deceased at the time of filing the bill, and all this conceded, affords a sufficient excuse for the omission to invoke his name into the proceedings. We consider these views confirmed by the case of *Byers vs. McClanahan*, 6 *G. & J.*, 250, and the cases there cited. See, also, 3 *Gill, at page* 94, *Clagett vs. Worthington*.

REMANDED UNDER THE ACT OF 1832, CH. 302, FOR FURTHER PROCEEDINGS.