( Decided February 19th, 1867.)

JACOB KUNKEL *vs.* JACOB MARKELL, RHODERICK DORSEY, Exc'r et al.

PLEADING IN EQUITY: DEMURRER TO BILL: PARTIES: MORTGAGE, MORTGAGOR, MORTGAGEE: PRAYER FOR GENERAL RELIEF: MULTIFARIOUSNESS.—A bill filed by mortgagees against one K., alleged that M. & K , being sureties for F. T. for debts due by him to divers persons, F. T., to secure them therefor, assigned and delivered to K., in trust, three single bills of M. P. O'H., and took from

K. a receipt therefor, at the same time guaranteeing that said single bills should be further secured by a deed of trust of certain lands theretofore conveyed to him by M. & K.; that K., in said receipt, agreed with F. T. to apply the proceeds of said single bills to the payment of expenses and debts of T. F. in the order specified therein, so that whatever remained resulted to F. T., increased by the amount of any of said debts paid from other sources; that the complainants took a conditional assignment of this resulting trust—the mortgages which were of different dates in the same year embracing also real estate—to secure the payment of the debts mentioned in the mortgages when due, if they were not already paid from other sources; that F. T. secured the payment of the single bills by a lien on certain lands in Allegany county, and that the said single bills had long since been paid to K.; that a debt due to K., which was to have been paid out of the proceeds of said bills, had been paid in whole or in part from other sources, &c. Other creditors of F. T., embraced in the trust, were made parties defendants, but F. T. was not made a party. The prayer of the bill, after praying for an account of the trust fund, concludes with the prayer for general relief. K., the only party defendant appearing, demurred to the bill for causes set forth in the demurrer.—HELD:

1st. That the bill seeks to appropriate to the complainants by virtue of the mortgages they hold, the resulting trust fund of F. T. in the hands of K.; it is, therefore, a bill to fo. eclose the mortgages as to that portion of the fund, and F. T., as a mortgagor, whose interests are to be effected and concluded by the decree, is a necessary party.

2nd. That the principle is well established, that upon a bill to foreclose, the mortgagor is a necessary party, unless the bill discloses a state of facts, (as for instance the insolvency of the mortgagor,) which would render it unnecessary to make him a party.

3rd. That M. P. O'H. was not a necessary party; he was the debtor of F. T. whose single bills were assigned in trust to K. and paid to him as alleged in the bill, and has no interest in the subject matter of the suit.

4th. That the claim of the complainants should have been stated with such clearness as to leave nothing to uncertain conjecture or vague inference; that it was necessary to aver that the mortgage debts continued to exist and were unsatisfied in whole or in part, and any other facts which would entitle them to participate in this fund; and that the bill being defective for want of these averments, they cannot be supplied by any extraneous matter, nor will the prayer for general relief aid the omissions.

5th. That the objection to the bill of *multifariousness* does not apply in a case like this, where the interests of the several complainants, though distinct and upon distinct conveyances, are yet of a similar nature, against the same defendants, and in relation to the same subject matter, and the relief prayed is in character the same to all.

APPEAL from the Equity side of the Circuit Court for Frederick county.

Kunkel *vs.* Markell et al.

The bill in this case was filed September 21st, 1860, by the appellees against the appellant, and alleges that Markell and Kunkel being responsible as sureties for Francis Thomas, for certain debts due by Thomas to divers persons, the said Thomas, to secure them, the said Markell and Kunkel, therefor, on the 21st of February, 1853, assigned and delivered to Kunkel in trust, three single bills of one M. P. O'Hearn, and as declaratory of such trust took from Kunkel this receipt :

"Received, Frederick, February 21st, 1853, of Francis Thomas, three single bills of M. P. O'Hearn, dated the 14th of February, 1853, one for $7,000, one for $5,000, and the third for $5,320, and endorsed and assigned by the said Thomas, with the further guarantee that said single bills shall be secured by a deed of trust to be executed by said Thomas upon his interest in the Allegany lands heretofore conveyed to him by Jacob Markell and the undersigned ; and the undersigned hereby agrees to apply the proceeds of said single bills first, to pay all the expenses incurred by the undersigned in and about the execution of the sales of the Allegany lands, and of this further trust ; secondly, to take unto himself individually, as part of the undersigned's share of the purchase money of said lands, the sum of $3,000, and the balance of the proceeds of said single bills to pay and apply to such debts of the said Thomas as the said undersigned may be surety for ; and lastly, to pay such other debts of the said Thomas as the undersigned and Jacob Markell may be jointly liable for as his securities or sureties.

JACOB M. KUNKEL."

The bill then charges that Thomas executed to Kunkel a lien as stipulated in this declaration of trust on the Allegany lands, as a guarantee for the payment of these single bills so assigned in trust. That afterwards, on the 5th of September, 1856, Thomas executed a mortgage to the com-

plainant, Markell, and to Rhoderick Dorsey, whose administrator is also a complainant, by which the aforesaid fund in Kunkel's hands is made liable for the payment of certaid debts due from Thomas to Markell and Dorsey, also to indemnify the said Dorsey because of his security for the said Thomas mentioned in said mortgage; all of which facts and amounts for which said fund is liable under this mortgage, will appear by a copy of the mortgage filed as a part of this bill marked A; that afterwards, on the 1st of October, 1856, Thomas executed to the complainant, Rigney, a mortgage by which he secured payment to Rigney of $1,000 due from Thomas to him, out of the said trust fund in the hands of Kunkel, all of which will appear by a copy of the mortgage filed as part of the bill marked B; that afterwards, on the 11th of November, 1856, Thomas executed another mortgage to the complainants, Pearre and Schley, by which he assigned to them the said fund in the hands of Kunkel in trust to pay them certain sums of money mentioned in the said mortgage, all of which will appear by a copy thereof filed as part of the bill marked C.

The bill then charges that the single bills so assigned to Kunkel in trust, have long since, to wit, on the —— of —— been paid to him by J. H. Gordon, trustee, in the case of *Kunkel vs. Thomas, O'Hearn and others,* in the Circuit Court for Allegany county, as a Court of Equity; and that the fund was, when so paid into the hands of the said Kunkel, subject to all the trusts and charges hereinbefore stated and liable for all the debts and securities mentioned in the several mortgages; that the $3,000 which Kunkel was to take to himself out of the fund, has been paid to him in whole or in part by other means, and consequently that sum is no longer a charge on the fund which is increased to that amount for distribution amongst the complainants; that Kunkel has used the fund outside

of the trust, and is, therefore, liable for interest on it from the time he so used it ; that the said Kunkel has heretofore refused, and still refuses to account to your orators for said fund in trust as aforesaid.

The bill also alleges that certain named parties, (who with Kunkel are made defendants,) are interested in the distribution and application of said trust fund, because they are creditors of the said Thomas, and the said Markell and Kunkel are securities for the said Thomas to them, and the said fund is in trust to indemnify the said Markell and Kunkel as such securities.

The bill prays for an answer from all the defendants, and that Kunkel may particularly answer on oath when the fund and the amount of it was paid him by Gordon, and whether he has used it outside of the trust, and that your orators may have such further and other relief as their case may require.

To this bill the defendant, Kunkel, demurred, and the grounds of demurrer which appear to have been relied on in the Court below, are :—

1st. That the bill is too loosely drawn, and the charges and averments so uncertain in their object, that they do not make such a case as should entitle the complainants to relief, and there being no other prayer but that for general relief, the Court cannot learn from the allegations of the bill what relief would comport with the case made.

2nd. That there is no charge by the complainants that the money they claim by the exhibits filed with the bill is still due and unpaid by the said Thomas.

3rd. That the bill is multifarious.

4th. That Thomas and O'Hearn should have been made parties defendants to the suit.

The Court, ( Nelson, J.,) overruled this demurrer, and from this order the defendant, Kunkel, has appealed.

The cause was argued before BOWIE, C. J., and BARTOL, GOLDSBOROUGH, COCHRAN and WEISEL, J.

*Joseph M. Palmer* for the appellant.

The appellant insists that the judgment of the Circuit Court is erroneous. Three distinct propositions were submitted to the Court below by the appellant upon demurrer, for its determination, and the ruling of the Court was, that the demurrer be overruled and the appellant ordered to answer the bill. I will argue the questions involved in the order the Court below decided them.

1st. I shall contend that the complainant's bill is radically defective. It does not contain apt, proper and sufficient averments to entitle the complainants to any relief they seek. The rules and principles of equity proceedings and pleadings are clearly defined and settled in this State. Every original bill must state a consistent case on behalf of the complainants, for if their claims are inconsistent, or any of them have no claim, the misjoinder will be fatal to the suit. The bill must state the cause of action in direct terms and with reasonable certainty, not necessarily with the same technical precision as at law, but with sufficient precision to show to the Court that the complainants have a definite claim in equity. The allegations must be positive and not by way of recital. It is an admitted principle in equity, that no relief can be granted beyond the scope of the averments. *Mitford's Eq. Pl.*, (*Jeremy's Ed'n,*) 42. *Flint vs. Reeves,* 3 *Ves., Jr.*, 343. *Lyon vs. Tallmadge,* 1 *Johns. Ch. Rep.*, 184. *Ellicott vs. Ellicott,* 2 *Md. Ch. Dec.*, 468. *James vs. McKernon,* 6 *John. Rep.*, 564. 6 *Paige's Rep.*, 239, 251. *Clarke vs. Turton,* 11 *Ves.*, 240. *Chambers vs. Chalmers,* 4 *G. & J.*, 420. *Hood vs. Inman,* 1 *Gill,* 234. 4 *John. Ch. R.*, 437.

Can it be successfully said that the bill in this case squares with these plain practical principles of equity pleadings?

I think not.   There is no distinct charge or statement in the bill which, in the slightest degree, entitles the complainant jointly to any part of the trust funds in the hands of the appellant, as the trustee of Francis Thomas, placed in his hands for a specific purpose, and for the use and benefit of specific *cestuis que trusts*.   The complainants by their bill, assume a false character in relation to said trust funds in the hands of appellant.   They assume the character of *cestuis que trust* under the declaration of the trust. They have no right, according to the averments in their bill, to any part of the trust fund as such.   They only can claim, under any circumstances, a contingent interest in the surplus which may by chance remain in the hands of the appellant, as trustee, after the trust is finally settled, and the real *cestuis que trust* are satisfied.   The complainants pretend to claim some interest in said trust funds by virtue of three mortgages which they exhibit as part of their bill, given to them separately and individually, for distinct and separate purposes, by Francis Thomas.   These mortgages convey by Thomas to the complainants, a large and valuable real estate, and the contingent interest of Thomas in the trust funds in question, to secure the debts and claims recited in said mortgages.   The appellees do not aver in their bill that there is any money due and owing on said mortgages by Thomas or anybody else. They don't pretend to claim that there is anything due on said mortgages, which is a material allegation in all bills to foreclose mortgages.   The bill ought to contain such averment.   It is the uniform practice, and always has been, to make such averments in a bill to foreclose mortgages, and it is considered a material averment for a mortgagee, before he can obtain an order and decree to sell, or in any-way dispose of property mortgaged, first to establish in a judicial proceeding, the amount of his claim.   This is usually done by referring the case to the auditor, &c.   It

may be said that the demurrer admits this fact. It is true, that a demurrer admits all facts well pleaded, but I do not understand that a demurrer admits a fact that is not pleaded at all.

The giving the three mortgages by Francis Thomas to the complainants, three years after the creation of the trust, was a transaction about which the appellant, as trustee, had no knowledge, interest or concern, and he is utterly unable to make any appropriate answer to any statement or averment in relation to such matters charged in the bill. Francis Thomas is the principal party interested. If he had been made a party to the bill, he could answer the whole matter understandingly. The bill is defective in this, it does not charge that the trust funds in the hands of the appellant were even sufficient to pay the claims of the *cestuis que trust* specified in the declaration of trust. It does not charge that, under any circumstances, there will remain in the hands of said trustee a surplus of funds, after paying and satisfying the *cestuis que trust* their claims. The bill does not pray any specific relief, and indeed it does not, in proper form, pray for any relief, leaving doubtful to the Court what the real object of the bill is. I respectfully submit, that the averments in the complainant's bill are not sufficient to entitle them to relief. The bill does not contain either sufficient form or substance. These principles appear to be too clear and plain to require any authorities to sustain them. The reasoning of the learned Judge of the Circuit Court upon the proposition, is not sustained by the authorities, and is opposed by the uniform practice of Courts of Equity in this State.

2nd. The appellant in the Circuit Court, objected to the sufficiency of the bill for multifariousness. The bill is clearly defective for that cause. The Court will never permit several complainants to demand by one bill, several matters perfectly distinct and unconnected, against one

defendant; nor one complainant to demand several mat-
ters of distinct natures against several defendants. 1
*Brown Ch. Ca.*, 200. *Cooper Pl.,* 182. *Mitford's Eq.
Pl.*, 181, (*note by Jeremy.*) *West vs. Randall*, 2 *Mason*,
201. *Harrison vs. Hogg*, 2 *Ves. Jr.*, 323.

This case seems to decide the very question involved in
the case under consideration. In the case of *Hester vs.
Weston*, 1 *Vernon*, 463, a demurrer was allowed to a bill,
because it contained several matters not relating one to the
other. Judge STORY in his Equity Pleading, defines multi-
fariousness in a bill to mean, "the improperly joining in
one bill, distinct and independent matters, and thereby
confounding them," and the example by which he illus-
trates his definition is thus given, "the uniting in one bill
several matters properly distinct and unconnected, against
one defendant, or the demand of several matters of a dis-
tinct and independent nature, against several defendants, in
the same bill." See *Story's Equity Pl.*, 271.

Sir THOMAS PLUMER, in *Brooks vs. Lord Whiteworth*, 1
*Mad. Ch. R.*, 57, says, "that certainly a defendant has
the right to insist that he is not bound to answer a bill
containing several distinct and separate matters relating to
individuals with whom he has no connection."

The authorities on this subject are very numerous, and
it would be useless to cite many of them on this occasion.
Judge STORY closes his review of the authorities upon this
defect in a bill, with the following remark: "The conclu-
sion to which a close survey of all the authorities will con-
duct us, seems to be, that there is not any positive inflexi-
ble rule as to what, in the sense of a Court of Equity, con-
stitutes multifariousness, which is fatal to a suit on demur-
rer." The question of multifariousness in a bill in equity,
has been frequently before the Court, and the facts and
circumstances in the cases which constitute such a defect
in equity pleading, have been carefully examined, and the

true rule extracted from the authorities, and adopted. 9 *G. & J.*, 286. *White vs. White*, 5 *Gill*, 359. *Griffin vs. Lee*, 10 *Md. Rep.*, 365. *Boyd vs. Hoyt*, 5 *Paige*, 65. *Swift vs. Elkford*, 6 *Paige*, 22.

These authorities seem to be conclusive for the appellant. The bill is clearly and maifestly multifarious, indeed it is a legal anomaly, and the like can hardly be found in any book of authority, to bring this case to the standard of the princi- ples of the authorities above stated ; the appellees are seek- ing by a joint bill to obtain, in some way, payment and satisfaction of three distinct and independent mortgages, given to secure separate and independent debts or claims to the appellees, separately not jointly. This certainly is a misjoinder, both of parties and causes of action, and not warranted by any authorities. The appellees, in their bill in the Circuit Court, charge and aver, that the three thou- sand dollars which the said appellant, as the trustee, was to take to himself, out of the trust funds, has been paid to the appellant in whole or in part by other means, not stat- ing when, by whom or under what circumstances paid, so as to give to the appellant an opportunity as defendant in the Court below, to answer the bill in a manner to defend himself against the charge. This is a distinct and independent cause of complaint, made by the appellees jointly, against the appellant, which must be decided before any distribu- tution of the trust funds can be made, even if the appellees jointly are or will be entitled to any part of the trust funds, which is denied. This distinct and independent charge and complaint of itself, renders the bill defective and multifarious.

It may be contended by the appellees, that the demurrer does not sufficiently point out the defect of multifariousness. It appears from the record, that the question of multifa- riousness was raised and argued in the Circuit Court upon a demurrer *ore tenus*, and decided by the Court. It is a

settled principle in equity, that in cases where the defend-
ants omit to demur for multifariousness, the Court may,
*"sua sponte"* take the objection and dismiss the bill. In
this case there was a general demurrer to the whole bill.
*Chew et al. vs. Bank of Baltimore,* 14 *Md. Rep.,* 299.

3rd. The judgment of the Circuit Court is erroneous
upon the third objection to the sufficiency of the bill. I
insist that the bill is defective for the want of proper par-
ties, and particularly because Francis Thomas, the mort-
gagor, was not made a party defendant.

A careful examination of the averments of the bill and
the exhibits in the case, which constitute a part of the bill,
are sufficient, I am inclined to think, to convince any legal
mind, that Francis Thomas has a material interest in the
subject matter of this suit; he is not only interested in see-
ing that the trust funds in hands of the appellant are prop-
erly applied and distributed, according to the true intent
and meaning of the trust, but he is materially interested in
the ascertainment of the actual sums due on the claims re-
cited in the several mortgages to each of the several appel-
lees, as claimed by them, if they do actually claim any-
thing, or sum due. It would seem to be perfectly clear,
that he is deeply interested in both questions, and ought to
have been made a party. In the consideration of this ques-
tion, it is not necessary to advert to the insufficiency of the
averments in the bill, or to the novelty of the procedure of
the appellees, by filing a joint bill to enforce the obligation
of the three mortgages in the case; for if Francis Thomas
ought, according to the strict rules of equity pleadings, to
have been made a party, the bill must be dismissed, even
if the averments of the bill are considered good and suffi-
cient. The general rule, as to who are to be considered
necessary parties to suits in equity, are well defined by the
authorities. "It is a general rule in equity, that all per-
sons materially interested, either legally or beneficially, in

the subject matter of the suit, must be made parties to it, either as plaintiffs or defendants.   It is true there are some exceptions to this general rule, but this case does not, it will be found on examination, fall within any of the exceptions.   *Milford's Eq. Pl.*, ( *by Jeremy,*) 164, 165.   *Edwards on Parties*, 1, 2, 3.

In the case of *Oliver vs. Palmer & Hamilton*, 11 *G. & J.*, 448, the Court of Appeals say: "It is a fundamental rule of equitable jurisprudence, to the universality of which the case before us forms not one of the exceptions, that where a bill is filed to effect a fund in which different persons have an interest, all the persons interested therein must be made parties.   *Fell vs. Brown*, 2 *Brown's Ch. Ca.*, 278.   *Haines vs. Beach*, 3 *John. Ch. R.*, 459.

"To a bill for foreclosure and sale of mortgaged property, all incumbrancers, or persons having an interest existing at the commencement of the suit, subsequent as well as prior in date of plaintiff's mortgage, must be made parties, otherwise they will not be bound by the decree."   In the case of *Caldwell vs. Taggart*, 4 *Peters*, 202, the Court say: "There is no want of learning in the books on this subject." The general rule is laid down thus: "However numerous the persons interested in the subject of a suit, they must all be made parties plaintiffs in order that a complete decree may be made."   *West vs. Randall, et al.*, 2 *Mason, C. C. R.*, 189.   *Wylie et al. vs. McMakin*, 2 *Md. Ch. Dec.*, 416, 417.   *Mechanics Bank vs. Seaton*, 1 *Peters*, 299.   13 *Peters*, 359.   *Crocker vs. Higgins*, 7 *Conn. R.*, 346.

By interest it implies a right in the subject of controversy which a decree more nearly or remotely may affect." *Wendell vs. Van Rensselaer*, 1 *John. Ch. Ca.*, 349.

The learned judge of the Circuit Court decided, that Thomas was not a necessary party.   He says: "It is a general rule, that no one need be made a party to a bill against whom, if brought to a hearing, the plaintiff can

have no decree." He cites 1st *Daniel's Practice*, 271, and 3 *Peere Wms.*, 311. This as an abstract proposition, is doubtless correct, but its application to this case is not perceived. The judge further says: "Thomas is in no wise responsible to them ( the appellees ) for the default of the trustee, nor could he be made so by any proceedings in the case ; and if he were called upon to answer, all he could say would be, that he had placed the funds in the trustee's hands for the benefit of the complainants." What a sad mistake! The trust funds were not placed in the hands of the trustee for the benefit of the complainants, but they were placed there for the benefit of specified *"cestui que trusts,"* according to the terms of the declaration of trust. From the opinion of the judge as expressed, we must conclude that he misapprehended the whole scope and object of the bill and the averments in it. The error of the learned judge is too apparent to require further comment.

*O. Miller* and *G. W. Dobbin* for the appellees.

1st. The appellees respectfully submit there is no sufficient ground on which to place the first of the above objections. The bill clearly makes out a case of *cestui que trusts* calling upon their trustee for an account and settlement and distribution of the trust funds in his hands. It avers the creation of the trust by Thomas, the purpose for which it was created, and charges that the defendant was made trustee, that the funds are in his hands as such trustee, and that he refuses to carry out the trust. The averments are entirely sufficient to inform the defendant of the charges against him, so as to enable him to understand what he is required to answer, and also to inform the Court what remedy is suitable to the case made by the bill under the general prayer for relief. *Mewshaw vs. Mewshaw*, 2 *Md. Ch. Dec.*, 12. *Young vs. Lyons*, 8 *Gill*, 169. *Craig*

*vs. Barnes*, 1 *Md. Ch. Dec.*, 151. *Bolgiano vs. Bolgiano*, 19 *Md. Rep.*

2nd. Nor is there anything in the second objection, which will warrant the sustaining of the demurrer. This objection is, that there is no charge made by the complainants, that at the time of filing this bill there was any sum or sums of money due to the complainants, or either of them, from Thomas, unpaid and unsatisfied, so as to entitle them to relief as prayed. The mortgages are filed with the bill, and by them this fund in the hands of Kunkel is expressly dedicated to the payment of the specified debts. In reference to the first of the mortgages, (that to Markell and Dorsey,) the bill expressly alleges that the fund is liable to the payment of the debts therein specified. Again, as to all the mortgages, the bill alleges, "that the fund was, when paid into Kunkel's hands, liable for all the debts and securities mentioned in the several mortgages; and that Kunkel has hitherto refused and still refuses to account to your orators for said fund in trust as aforesaid. These are sufficient averments that the claims of the complainants are still due and owing.

4th. Nor is the objection of multifariousness sustainable. Where there are two good causes of complaint growing out of the same transaction, or where there is one common intent or object, and the parties are all jointly concerned, and the interest of one is not to be distinguished from the other, while the relief sought by each is of the same subject matter, and not different in its nature and character, the objection of multifariousness will not hold. Here there are in the hands of this defendant, trustee, trust funds specifically appropriated to the benefit of each of the specified claims. The complainants have a common interest in the fund for the payment of their respective claims, and the defendant a common liability to each. In such a case a demurrer for multifariousness will not lie. *Story's Eq.*

*Pl.*, *secs.* 284, 285, 285 *a*. *Thomas vs. Doub*, 8 *Gill*, 8. *Young vs. Lyons*, 8 *Gill*, 164. *Williams vs. West*, 2 *Md. Rep.*, 174. *Doub vs. Barnes*, 1 *Md. Ch. Dec.*, 127. *Peters vs. Van Lear*, 4 *Gill*, 249.

5th. The objection that O'Hearn and Thomas were not made parties is also, it is submitted, untenable. No one need be made a party to a bill against whom, if brought to a hearing, the plaintiffs can have no decree. O'Hearn and Thomas are each in this precise condition with reference to this bill; and besides this, Kunkel, the trustee, is the representative of Thomas the creator of the trust, and is the only necessary party in such a case to be brought before the Court. *Hoye vs. Johnston*, 2 *Gill*, 291. 1 *Daniel's Ch. Pr.*, 271, 339. 3 *Peere Wms.*, 311, *note*. *Story's Eq. Pl.*, *sec.* 231. *Davis vs. Simpson*, 5 *H. & J.*, 147. *Calvert on Parties*, 7, (17 *Law Lib.*) *Crook & Wife vs. Brown*, 11 *Md. Rep.*, 158. *Davis vs. Graham*, 2 *H. & J.*, 94. *Lucas vs. McBlair*, 12 *G. & J.*, 1.

WEISEL, J., delivered the opinion of this Court.

The three single bills mentioned in the receipt of Jacob M. Kunkel to Francis Thomas, dated February 21st, 1853, and set out in the bill in this case, passed into the hands of said Kunkel, who agreed with said Thomas to apply the proceeds to the expenses and debts of Thomas specified therein, and in the order therein stated. Whatever remained resulted to said Thomas, increased by the payment of any of said debts from other sources. This assignment to Kunkel was an absolute one, for the purposes expressed in the receipt.

The mortgagees in the three mortgages exhibited with the bill, who were the complainants below and are the appellants in this case, took a conditional assignment of this resulting trust, the mortgages embracing also certain real estate ; all conveyed to secure the payment to the mortga-

gees of the several debts of said Thomas mentioned in the mortgages, provided they were not paid by Thomas at the times named in said mortgages respectively. The mortgages were given at different times in 1856, thus creating rights of priority between the mortgagees, to the premises and rights mortgaged.

The bill, as has been stated, was filed by the mortgagees in September, 1860, after the times limited in the mortgages for the payment of the debts secured by them, (all which matured in 1857,) against the said Jacob M. Kunkel, simply alleging and setting forth the receipt he gave, and that he, Thomas, had secured the payment of the notes or single bills therein mentioned, by a lien on certain lands in Allegany county; and that said single bills had long since been actually paid to said Kunkel. It also alleged the execution of said three mortgages, exhibiting copies from the records as parts of the bill. It charged that the sum of three thousand dollars due to Kunkel, and to be paid by the proceeds of the single bills in the receipt, had been paid in whole or in part by other means, and that the fund in his hands had been proportionably increased thereby; also, that Kunkel had used the fund outside of the trust, and was liable for interest on it from the time he so used it; and that he had refused, and still refused to account to the complainants for said fund.

Other parties, creditors of Thomas, whose debts were to be paid with the proceeds of the single bills mentioned in the receipt, were made parties defendants, with Kunkel, to the bill. Thomas himself was not made a party.

The bill prayed for an answer from Kunkel on oath to these matters, "and particularly that he answer, when the said trust fund, and the amount thereof was paid to him," and "whether he had used, outside of the trust, the said trust fund, as charged in the bill; also, that the other defendants should answer the several matters and things

stated and charged in the bill, and that the complainants might have such further or other relief as their case might require.

The only party appearing to the bill was Mr. Kunkel, who demurred to it for the causes set forth in the demurrer, which was overruled by the Court below, and he was required to answer. From this order this appeal was taken.

The demurrer is in the usual form of a general demurrer, with a protestation, and assigning special causes of objection to the bill as apparent on its face. These are, that the complainants have not, by proper averments, stated a case that entitles them to relief against the defendant, Kunkel ; that they have not charged that at the time of filing their bill, any sum or sums of money was due to them, or any of them, by Francis Thomas, so as to entitle them to the relief prayed ; and that said Thomas, and M. P. O. Hearn, (the maker of the single bills assigned to Kunkel,) were necessary and proper parties to the bill.

It is very apparent, that the complainants stand in a different relation to Kunkel from that of the other creditors of Thomas, who were to be paid with the proceeds of the single bills mentioned in the receipt. These were *cestuis que trust* of the fund, and could resort to Kunkel, as trustee, for an account and application of the fund to their claims. But the complainants do not stand in that relation. They are not *cestuis que trust*, but assignees by way of mortgage, to whom Kunkel is to pay Thomas' interest in the fund only in the event that Thomas himself had not paid the debts to secure which he had given the mortgages. They had but a lien upon the resulting trust in the fund, by virtue of the mortgages, and in asserting this lien, or stating a proper case against Kunkel for relief in respect to it, certain averments and parties became necessary. And the question now is, does this bill present a proper case for

the relief prayed? If not, the demurrer was properly interposed.

The bill seeks to appropriate to the complainants, by virtue of the mortgages they hold, the resulting trust fund of Thomas in the hands of Kunkel. It is, therefore, a bill to foreclose the mortgages as to that portion of the fund. Thomas, the mortgagor, has a direct interest in the subject matter, and is to be affected by the decree. If he has paid the debts secured by the mortgages, or if the other mortgaged property has been applied in their extinguishment, the complainants have no longer any right to the fund; and Kunkel is to be protected by the decree as against any claim of Thomas, if the fund is to be decreed to the complainants. In other respects, also, Thomas, the real debtor, is interested in any account to be taken of the fund.

He is, therefore, as mortgagor, whose interests are to be affected or concluded by the decree, a necessary party. Entire justice cannot be done without him, and he cannot, therefore, be dispensed with, as a merely nominal or formal party. The principle is well established that upon a bill to foreclose, the mortgagor is a necessary party, unless the bill discloses a state of facts or a condition of things, (as, for instance, the insolvency of the mortgagor,) which would render the making of him a party unnecessary. Such a cause for exemption is not alleged in this case. *Story's Eq. Pl.*, 193, 195. *Worthington vs. Lee,* 2 *Bland.,* 678. We are clearly of opinion that Thomas should have been made a party defendant to this bill; but we do not discover any interest in O'Hearn which would require him to be made a party. He was the debtor of Thomas whose single bills were assigned in trust to Kunkel and paid to him, as alleged in the bill, and has no interest in the subject matter of this suit.

Another objection raised by the demurrur to this bill is,

that it does not sufficiently state a case for the relief prayed, and that it omits material averments, which the admissions of the demurrer do not supply ; that all that is stated in the bill may be admitted, as is done by the demurrer notwithstanding the *protestando*, and yet the complainants have stated no case against the defendant, Kunkel, for relief. In this objection we also concur.

It must be borne in mind that this is not the bill of the *cestuis que trust*, entitled absolutely to the fund under the receipt, calling upon the trustee to account and pay, for which purpose a bill by them constructed as this is, might be sufficient, but it is by parties, mortgagees, holding a different relation, both to the fund and the defendant, Kunkel ; and it is necessary for them, as in all cases, to state such facts or make such averments, generally and substantially, not minutely or in detail, as would entitle the complainants to the relief they ask against the party to bill. These cannot be supplied by any extraneous matter, nor will a prayer for general relief aid the omission. The claim of the party must be stated with clearness, so as to leave nothing to uncertainty, conjecture or vague inferences. As the complainants have only a contingent interest in the trust fund that resulted to Thomas, dependant upon the non-payment of the debts secured by the mortgage lien upon it, it became necessary for them to aver that those debts continued to exist and were unsatisfied, either in whole or in part; and, also, to state any other facts which would entitle them to participate in this fund. Without such a state of facts, equity could not properly afford them relief; and the necessity or obvious propriety of such distinctive averments, is a further reason why the mortgagor should have been made a party. The bill is deficient for the want of these averments. See, also, *West vs. Hall*, 3 *H. & J.*, 221. *Chalmers vs. Chambers*, 6 *H. & J.*, 29. *Ringgold vs. Ringgold*, 1 *H. & G.*, 11. *Town-*

send *vs. Duncan,* 2 *Bl.,* 45. *Lingan vs. Henderson,* 1 *Bl.,* 236. *Berry vs. Pierson,* 1 *Gill,* 234. *Mewshaw vs. Mewshaw,* 2 *Md. Ch. Dec.,* 15 ; and *Young vs. Lyons,* 8 *Gill,* 169.

We do not think the bill is objectionable on the ground of multifariousness, which was urged by the appellant's counsel in his brief and in the argument. In this case the interests of the several complainants, though distinct and upon distinct conveyances, are yet of a similar nature, against the same defendants, and in relation to the same subject matter, and the relief prayed is the same to all in character. In such case the objection of multifariousness does not apply. *Story's Eq. Pl.* secs. 285, 286, 531, 533. This case, in this respect, is similar to that of a creditor's bill in the Maryland practice. See, also, *Thomas vs. Doub,* 8 *Gill,* 7. *Young vs. Lyons,* 8 *Gill,* 166. *Williams vs. West's Adm'rs,* 2 *Md. Rep.,* 198. *Peters vs. Van Lear,* 4 *Gill,* 263, 264. Our views on this point are supported by the case of *Wilson vs. Wilson,* decided by this Court at April term, 1865, and adverted to in the argument of this case.

The order of the Court below overruling the demurrer, and requiring the defendant to answer, will be reversed for the reasons assigned in this opinion ; but as the purposes of justice may be advanced by permitting further proceedings in the cause by amendment of the bill, making additional parties or otherwise ; in conformity with this opinion, the cause will be remanded to the Circuit Court for Frederick county, as a Court of Equity, for such further proceedings as shall be necessary for determining the cause upon its merits ; the appellant to have his costs of this appeal ; all other costs to abide the event of the suit.

*Order reversed and cause remanded*
*for further proceedings.*

(Decided February 21st, 1867.)